INDIANAPOLIS HEAT AND LIGHT COMPANY v. FITZWATER.

[No. 10,276.   Filed December 11, 1918.   Rehearing denied March 7, 1919.   Transfer denied June 5, 1919.]

1.  MASTER AND SERVANT.—Workmen's Compensation Act.—Findings of Industrial Board.—Conclusiveness.—The findings of the Industrial Board must be upheld on appeal unless they are not warranted by the evidence.   p. 424.

2.  MASTER AND SERVANT.—Workmen's Compensation Act.—Employe's Wilful Misconduct.—Burden of Proof.—In a proceeding for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1918, the burden of show-

ing that the employe's injury resulted from wilful misconduct within §8 of the act is upon the employer. p. 427.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Employe's Wilful Misconduct.—Evidence.*—In a proceeding under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), for compensation for the death of a lineman electrocuted by coming in contact with a live wire, evidence that decedent was guilty of contributory negligence, and that decedent violated certain rules of the employer which were enforced with little or no diligence and were left largely to the option and discretion of the employes for their enforcement, *held* insufficient to show wilful misconduct on the part of deceased within §8 of the act, it being necessary to show intentional disobedience to a strictly enforced rule to establish wilful misconduct. p. 427.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Findings of Industrial Board.—Conclusiveness.*—There being substantial evidence sufficient to support the facts found by the Industrial Board, such finding must stand. p. 428.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Mabel Fitzwater against the Indianapolis Heat and Light Company. From an award for applicant, the defendant appeals. *Affirmed.*

*Elmer E. Stevenson,* for appellant.
*Frank A. Bruce,* for appellee.

IBACH, J.—Quincy Fitzwater was killed in an industrial accident on August 30, 1917, while he was in the employ of appellant as a lineman, at an average weekly wage of $19.72.

It appears that decedent was engaged in removing some heavy copper wires from appellant's poles and crossarms, and replacing them with lighter wires. On the day that he was killed he had gone to the south end of a line of poles on Meridian street, climbed one of the poles, fastened "a rope hand line" to one end of the large copper wire, then cut such wire near

424    APPELLATE COURT OF INDIANA,

Indianapolis Heat, etc., Co. *v.* Fitzwater—70 Ind. App. 422.

where he had fastened the rope. He then dropped the wire and rope to the ground and descended the pole. He was either preparing to place tape around the rope where it was fastened to the wire, or was actually engaged in so doing, so that the severed wire could be guided over the crossarms, when in some manner such wire became charged with electric current and conveyed into his body, causing his death.

The application for compensation filed by appellee, decedent's widow, before the Industrial Board was in the usual form. The evidence was finally heard by the full board, and an award made granting to the petitioner compensation for 300 weeks at the rate of $10.86 per week, together with burial expenses not exceeding $100.

It is from this award that appellant appeals, and contends the uncontradicted evidence shows that decedent met his death by reason of his wilful misconduct and wilful failure to use safety appliances and his wilful failure to obey its orders and rules and to take the precautions required of him by law, and therefore, under §8 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), it was error to award any compensation. In other words, it is insisted that the conduct of the decedent under all the facts and circumstances of the case amounted in law to wilful misconduct as defined in §8, *supra,* and therefore the award made by the Industrial Board was not sustained by the evidence, and is contrary to law.

1. The findings of the Industrial Board are against the contention, and must be upheld by this court unless such findings are not warranted by the evidence.

MAY TERM, 1919. 425

Indianapolis Heat, etc., Co. *v.* Fitzwater—70 Ind. App. 422.

In addition to the facts already disclosed, it is found: That appellant had actual knowledge of decedent's injury and death at the time of the occurrence; that appellant duly executed a report thereof to the Industrial board and filed the same in proper time, and that appellee was decedent's wife, and was living with him at the time of his death. At the time of decedent's death and for a long time prior thereto appellant had in force certain written rules relative to the manner in which linemen should perform their work, and a copy of said rules had on different occasions been furnished to decedent long prior to the date he was electrocuted. In a general way the rules provided that all tools would be furnished by appellant to the linemen on application to the storekeeper, except pliers, connectors, climbers, screwdrivers and belts, which tools the linemen were required to own. As to the manner of doing the work and as to the use of safety appliances several rules were adopted. Rule 9 provides: "Never place the line where it can get against a sign, cornice, roof, pole, or anything else where exposed to the weather, unless it would first rest against glass." Rule 13. "* * * It is your orders at all times to do what you do thoroughly." Rule 14. "When working on a circuit keep it 'closed.' " Rule 15. "In working on lines all circuits must at all times be regarded as alive and grounded. With hundreds of miles of wire throughout the city, some of which are carrying heavy currents at all times, many using ground return, the line you are on may 'come alive' at any time—*be careful.*" Rule 7. "When working on poles always use your safety belts, as well as other safety devices you are requested to use." Rule 18. "* * * The company demands that you

take necessary time and precaution for your own protection at all times.'' Rule 20. ''The company will furnish rubber gloves and insulating stools which you are commanded to use at all times. Don't neglect this.'' Rule 21. ''Do not depend upon insulated wire for safety. Insulation of high-tension aerial wires is impossible.'' The rubber gloves provided by defendant did not cover the arms of the workmen above the wrist joint. If decedent had had on a pair of the gloves at the time of his injury they would not have prevented his injury and death. Up to the time of decedent's death the extent to which, and the manner in which, the safety appliances provided by the defendant and described in its rules were to be used were left almost entirely to the discretion of the particular workman. The rubber shield had not up to that time been used extensively and was not regarded by the foreman under whom decedent was working at the time as an efficient safety device. ''That the evidence does not show and the board cannot find that the use of the safety devices provided by the defendant and described in its rules would have prevented the injury and death of decedent; that the exact manner in which the live wire came in contact with the arm of decedent is not shown by the evidence; that his injury and death was not due to any wilful misconduct upon his part or to any wilful disobedience of the rules of the defendant, or to any wilful failure to use any safety device provided by it; that defendant's foreman under whom decedent was working had not given him any specific instructions as to the manner in which he should detach the wire on August 30, 1917, and had not given him any specific instructions as to compliance with any of the rules of defendant, or as

to the use of any safety device whatever, but had left to the discretion of decedent the determination of the manner of doing said work and also the determination and advisability of using safety devices and the manner of their use; that the injury resulting in the death of decedent was due to an injury by accident arising out of and in the course of his employment with the defendant."

As we have said, the determination of the controversy in this case depends entirely on whether the injury and death of decedent was caused by his 2. own wilful misconduct, and the burden of showing this fact rested upon appellant. It has been repeatedly held that "wilful misconduct" means something different from and more than negligence, however great; it involves conduct of a quasi criminal nature, the intentional doing of something, either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard to its probable consequences. *Haskell, etc., Car Co.* v. *Kay* (1919), 65 Ind. App. 545, 119 N. E. 811.

It may be conceded that the evidence shows decedent to have been guilty of contributory negligence in doing the particular work required of him, 3. that is to say, he did not exercise that degree of care which the conditions and circumstances called for; but negligence does not prevent compensation. And it might be said that there was some evidence before the board which would justify the inference that decedent was guilty of an infraction of certain rules of appellant company which were enforced with little or no diligence and were left largely to the option and discretion of its employes for their enforcement, but this falls far short of wil-

ful misconduct as intended and contemplated by the statute, *supra*. There must be shown an intentional disobedience to a strictly enforced rule to support the defense of wilful misconduct.

The evidence, however, taken as a whole, supports the finding of the Industrial Board, and does not warrant the holding on our part that the evidence 4. compels the conclusion as a matter of law that decedent met his death by reason of his own wilful misconduct. On the contrary, we are satisfied that there is substantial evidence sufficient in itself to support the facts found by the Industrial Board, and certainly ample evidence which aided by fair inferences fully warrants such findings. This being true, the finding of the Industrial Board must stand.

Award affirmed, with five per cent. damages, as provided by §3 of the amendment to the Workmen's Compensation Act (Acts 1917 p. 154, §8020q2 *et seq.* Burns' Supp. 1918).