SHEPHERD ET AL. *v.* WASHINGTON PARK CEMETERY ASSOCIATION.

[No. 14,914. Filed June 28, 1933. Rehearing denied September 28, 1933.]

456

*John F. Linder* and *Carl Seet,* for appellants.

*Burke G. Slaymaker, Clarence F. Merrell, Theodore L. Locke* and *James V. Donadio,* for appellee.

PER CURIAM.—This is an appeal from an award of the full Industrial Board, denying compensation to appellants as the surviving widow and daughter, respectively, of one Clyde F. Shepherd, on a claim filed by them for compensation because of his death as the result of an accident arising out of and in the course of decedent's employment by the appellee.

The full Industrial Board found the facts as follows: "The full Industrial Board of Indiana having heard the argument of counsel and having reviewed the evidence and being thereby duly advised in the premises, finds that on July 21st, 1932, one Clyde F. Shepherd was in the employ of the defendant and that on the said 21st day of July, 1932, the said Clyde F. Shepherd died. That the death of the said Clyde F. Shepherd was not due to an accidental injury sustained while in the employ of the defendant."

The evidence is not conflicting and discloses that decedent was employed by appellee; his duties were those of a laborer, in appellee's cemetery; he did maintenance work, dug graves and any other work that came under the laboring class in the cemetery. A solution of what was known as "Black Leaf Forty" and water was used as a spray with which to spray plants and shrubbery in the cemetery. "Black Leaf Forty" was a very dark colored liquid, the color of dark brown oil, very nearly black, it had an odor of strong tobacco, the smell of nicotine, a sickening odor; it was in a highly concentrated form, could not be mistaken for water, and took very little of it with water to make a spray solution. This solution was used in a spraying machine; one man pumped the spray and the other man handled the hose; Shepherd operated the pump but he never did the spraying; there were other men employed in the cemetery, so Shepherd did not always help with the spraying. William Cline was ground superintendent; he had an automobile which he used in the performance of his duties; for convenience he carried a six or eight ounce clear glass bottle in his automobile in which he had some "Black Leaf Forty;" this was carried around by him so if a nest of caterpillars was discovered it could be exterminated. He used a small spray gun for this purpose which he carried in the automobile, but it was not in the automobile on the day in question. A general electric water cooler was kept in the office on the cemetery grounds, all the men used that for drinking purposes when they were near it. When they were working away from the office most of the men carried an ordinary stone jug with water in it. On the day of his death Shepherd was engaged in transplanting flowers; he was using Cline's automobile in which to travel from the office where the flowers which he was transplanting were located to a place about 1,500 feet distant from the

office where he was again planting the flowers. Mr. Cline, a witness, called on behalf of the claimants, on direct examination was asked this question: "You seen him come up about three-thirty. Describe to the court his condition at that time?" To which he made the following answer: "When he came up there, Mr. Elder and I were pitching horseshoes there and he called to us or he said, 'Oh, Bill, come here' just that way and I said, 'What do you want?' and then I took,—no, Mr. Elder said, 'It looks like there is something wrong with him, Bill', and I said, 'Yes,' and we both ran to the car and as I got to the car, he said, 'What was in the bottle?' in a sort of faint way and slumped over the steering wheel and I said, 'For God's sake, you didn't drink out of that bottle,' and he said, 'I took a little whiff.' "

To entitle the appellants to compensation, the burden was upon them to show by some competent evidence, and it would be necessary for the Industrial Board to find; that the decedent was an employee of the appellee; that he received an injury by accident; that the accident arose out of and in the course of the employment; the character and extent of the injury and the decedent's average weekly wage. *Muncie Foundry, etc., Co.* v. *Thompson* (1919), 70 Ind. App. 157, 123 N. E. 196; *Brown* v. *American Tile, etc. Co.* (1931), 93 Ind. App. 344, 178 N. E. 446; *Pioneer Coal Co.* v. *Hardesty* (1921), 77 Ind. App. 205, 133 N. E. 398.

The full Industrial Board found specifically that the death of the decedent was not due to an accidental injury sustained while in the employ of appellee. It is so well settled by this court, that we will not weigh the evidence, where there is any competent evidence to sustain the finding and award of the Industrial Board, and when the facts proven are of such a character that reasonable men could draw different conclusions therefrom, that such award will not be dis-

turbed on appeal, that the citation of authorities is unnecessary.

The facts heretofore set out fully sustain the finding and the award of the Industrial Board, to the effect that the accident (if it was an accident) causing the death of the decedent, did not arise out of and in the course of his employment. There is no evidence in the record from which the board could find that the voluntary taking of a "whiff" (which has been defined to mean, "To inhale, or draw in, as air or tobacco smoke, to 'drink' [tobacco]; also to drink [liquor]." Webster's New International Dictionary) of "Black Leaf Forty," by Shepherd had any casual connection whatever with his duties as an employee of appellee. It was never used for any purpose, except in the preparation of a spraying solution, and the only duties ever performed by decedent in the application of the solution was in the operation of the spray pump. Decedent did not take the "whiff" while he was engaged in using the liquid for any purpose for which it was intended, or as a result of its intended use. The fact that the decedent voluntarily took the "whiff" of "Black Leaf Forty" during the course of his employment by appellee, and that by reason thereof he died, would not be sufficient to sustain a finding that his death was the result of an accident arising out of and in the course of his employment by appellee. See authorities heretofore cited.

The award of the full Industrial Board is affirmed.