ELEY ET AL. *v.* BENEDICT.

[No. 17,056. Filed February 9, 1943. Rehearing denied March 13, 1943. Transfer denied April 1, 1943.]

*Henry L. Humrichouser* and *Seebirt, Oare & Deahl*, all of South Bend, for appellants.

*Rhodes & Rhodes*, of Peru, for appellee.

FLANAGAN, P. J.—This is an appeal from the Industrial Board which awarded appellee compensation against appellants. The sole question on appeal is whether the facts are sufficient to sustain the finding of the Industrial Board that appellee was in appellants' employ at the time of the involved injury.

The evidence as to pertinent facts is undisputed. In substance it is as follows:

On August 6, 1941, one C. D. Morgan went to where appellee was working and asked him to cut timber off a certain farm known as the Ward farm. Appellee asked Morgan where Morgan would get the money to pay him and Morgan replied that he would get the money from Mr. Eley of Argos, whereupon appellee agreed to cut and haul the timber for $3.50 per thousand feet. Appellee arranged with one Isaac Stoffer to help and Stoffer received half the money. Appellee kept the record of the number of feet. Morgan said appellee would have to go to Argos where Mr. Eley would pay him but later Morgan came back and paid appellee himself. After finishing on the Ward farm, appellee worked for another man for a while and then started cutting timber again for Morgan on a certain farm known as the Trippeer farm on November 15, 1941, where he was injured on November 24, 1941.

There is no other evidence of dealings or conversations between appellee and the appellants or any of them. There is no evidence that any conversations, contracts or dealings between Morgan and appellants were ever made known to appellee.

Appellants operated a sawmill under the name of E. E. Eley. Morgan was a timber scalper who bought growing timber, some of which he sold to appellants at an agreed price per thousand feet. Morgan cut the timber and usually did the hauling, although he sometimes employed appellants to do the hauling with their trucks at a specified price per thousand feet. It was customary for appellants to advance sums of money to Morgan to pay for the timber he bought and to pay his employees. This money was sometimes advanced by check made directly to the person who was to receive it. Such advancements were charged to his account and when Morgan sold and delivered timber to appellants his account was credited with the amount of the sale. Appellants exercised no control over Morgan's purchases and sales of timber nor over his cutting and hauling the timber. If the timber Morgan bought from a certain farmer when cut and hauled brought more than the purchase price plus the cost of cutting and hauling the profit was Morgan's. If there was a loss, the loss was Morgan's. This custom was followed as to the timber on the Trippeer farm. Appellants advanced the money to pay Trippeer and to pay appellee and the other men who cut and hauled the timber. The advancement for Trippeer was made by check payable to Trippeer but the amount was charged to the account of Morgan.

From the above facts it seems quite clear that the only relationship between appellants and Morgan was

that of purchaser and seller of timber. See § 58-101, Burns' 1933, § 14778, Baldwin's 1934. It seems equally clear that the relationship between appellee and Morgan was that of employee and employer and that no such relationship existed between appellee and appellants.

However, appellee points to three additional items of evidence which he contends make Morgan the agent of appellants and consequently create the relationship of employer and employee between appellants and appellee:

1. The written contract between Morgan and Trippeer for the purchase of the timber is signed "C. D. Morgan" but in the body of the contract Morgan is referred to as "C. D. Morgan, Agent for E. E. Eley." Morgan mailed a copy of this contract to appellants.

2. Morgan testified that he was named "agent" in the contract so that if anything happened to him "Eley would have some proof for what he had paid this money for" and "would own the timber."

3. When appellee's accident came to appellants' attention they notified their insurance company.

We cannot agree with appellee that the above three items of evidence can change the clear contractual relationship among the parties. The mere use of the word "agent" by Morgan in his contract with Trippeer could not make him an agent of appellants when his contractual relationship with them was clearly that of a seller. Nor could the fact that they were informed of his use of that word alter the legal effect of their transactions. It is to be remembered that the evidence does not disclose that the contents of the contract were at any time known to appellee, and we do not have here a case of "apparent authority."

Neither would Morgan's interpretation of the legal

effect of the contract "if something should happen to him" be in any manner controlling. The fact ██ that appellants notified their insurance carrier of the accident might well indicate that they were not sure as to whether they were legally liable or free from liability, or even that they considered themselves liable; but it would not change the legal effect of a clear situation. We do not have here a case of inter-preting an ambiguous contract by giving effect to the interpretation which the parties to it placed upon it.

We are unable to discover any evidence which justi-fies the finding of the Industrial Board that appellee was in the employ of appellants at the time of the involved injury.

Award reversed.

Royse, J., dissents with opinion.

Dowell, J., concurs in dissent.

### DISSENTING OPINION.

ROYSE, J.—Because of my profound respect for the great learning and ability of my colleagues on this court, it is with real trepidation and hesitancy that I venture to dissent from the prevailing opinion in this cause. It is only upon the most urgent persuasion of my con-science that the majority opinion is in direct conflict with my conception of the duty of this court in such cases as here presented, that I am impelled to voice disagreement with their decision.

It is my understanding that this court and other similar tribunals, in considering questions similar to that presented by this appeal, are not permitted to weigh the evidence heard by the trial court or fact-finding body. The rule, as I understand it, is that if there is *any* evidence tending to support the verdict, or which by a reasonable inference would tend to support

the verdict, which is legally sufficient to establish the material allegations of the complaint, this court cannot reverse the judgment because of the insufficiency of the evidence. *The Fort Wayne, Jackson and Saginaw R. R. Co.* v. *Husselman* (1878), 65 Ind. 73; *The Cincinnati, Hamilton and Indianapolis Railroad Co.* v. *Madden* (1893), 134 Ind. 462, 34 N. E. 227; *Lake Erie and Western Railroad Company* v. *Stick* (1895), 143 Ind. 449, 41 N. E. 365; *Columbia School Supply Co.* v. *Lewis* (1916), 63 Ind. App. 386, 115 N. E. 103; *Muncie Foundry etc. Co.* v. *Coffee* (1918), 66 Ind. App. 405, 117 N. E. 524; *Haskell and Barker Car Company* v. *Brown et al.* (1918), 67 Ind. App. 178, 117 N. E. 555; *Indiana Car and Equipment Company* v. *Celotto* (1919) 69 Ind. App. 341 121 N. E. 834; *Indianapolis Heat and Light Company* v. *Fitzwater* (1919), 70 Ind. App. 422, 121 N. E. 126; *Alexander Box Co.* v. *Cutshall* (1920), 73 Ind. App. 287, 127 N. E. 286.

The rule is based upon the sound logic that an appellate court cannot, by merely reading the evidence, without any personal knowledge of the intelligence or character of the witnesses; without the opportunity of observing their demeanor on the witness stand, or any of those other indicia by which men ordinarily judge the truthfulness and credibility of evidence, be in as good a position to determine the facts as was the trial court. In applying the rule, the courts have used various qualifying terms, such as "reasonable evidence," "competent evidence" and "legal evidence." An examination of the opinions in which these qualifying terms occur discloses they are used synonymously and interchangeably and are intended to mean that when there is any legally competent evidence to sustain all of the material allegations of the complaint an appellate court will not reverse the finding of the trial court or

fact-finding body when the sufficiency of the evidence is presented to it for determination. Of course, as was said in one of the early Industrial Board cases decided by this court (*Haskell and Barker Car Company* v. *Brown et al., supra,* at p. 184), "the dependent must have some evidence from which the rational mind is relieved from that uncertainty which results merely from speculation or fancy. This demand, however, is met by *any evidence* (my italics), though slight, which is 'sufficient to make a reasonable man conclude in his favor' as to such essential facts." Citing, *Sponatski's Case* (1915), 220 Mass. 526, 108 N. E. 466.

I am aware that in the cases of *Warren* v. *Indiana Telephone Co.,* (1940), 217 Ind. 93, 26 N. E. (2d) 399, and *Loucks* v. *Diamond Chain & Manufacturing Co.* (1941), 218 Ind. 244, 32 N. E. (2d) 308, our Supreme Court has said that the finding of the Industrial Board must rest upon a "substantial factual foundation." In the Warren case, *supra,* the court explained what it meant in using these qualifying words by saying: "If, however, it should be made to appear that the evidence upon which the agency acted was devoid of probative value; that the quantum of legitimate evidence was so proportionately meagre as to lead to the conviction that the finding does not rest upon a rational basis; or that the result of the hearing must have been substantially influenced by improper considerations, the order will be set aside because the proof, taken as a whole, does not support the conclusion reached." With this explanation I believe that the court intended to restrict the ordinary interpretation of the term "substantial factual foundation" so that it would come within the rule hereinbefore set out. I do not believe that our Supreme Court intended to overrule its own decisions and the decisions

of this court and to require a greater degree of proof to sustain the finding of facts than had for so many years heretofore been the rule.

In the Loucks case, *supra*, the Supreme Court used the expression "If the finding of the board rests upon a substantial factual foundation, it will not be disturbed," and in reversing the decision of this court affirming the award of the Industrial Board, held that if improper and incompetent evidence had not been considered there would be no evidence to sustain the award of the board. I do not consider that this decision does or was intended to overrule the long established precedent.

In the consideration of the question presented by this appeal, certain firmly established principles must be kept in mind. (1) The Workmen's Compensation Act must be liberally construed to give effect to its humane purposes. § 40-1201, Burns' 1940 Replacement, § 16377, Baldwin's 1934; *Czuczko et al.* v. *Golden-Gary Company, Incorporated.* (1931), 94 Ind. App. 47, 177 N. E. 466, 179 N. E. 19; *Cunya* v. *Vance* (1935), 100 Ind. App. 687, 197 N. E. 737; *Union Hospital* v. *S. P. Brown & Co.* (1937), 104 Ind. App. 430, 11 N. E. (2d) 520; *Kunkler* v. *Mauck* (1940), 108 Ind. App. 98, 27 N. E. (2d) 97. (2) The provision of the statute (Acts 1929, ch. 172, § 15, p. 536, § 40-1215, Burns', 1940 Replacement, § 16391, Baldwin's 1934), which provides: "No contract or agreement, written or implied, no rule, regulation or *other device* (my italics) shall, in any manner, operate to relieve any employer in whole or in part of any obligation created by this act." (3) That because of the rule of liberal construction of the Workmen's Compensation Act, where any doubt exists as to whether or not a workman is an employee or an independent contractor, the doubt is to be resolved in favor of the

employee. *Domer* v. *Castator* (1925), 82 Ind. App. 574, 146 N. E. 881; *Meek* v. *Julian* (1941), 109 Ind. App. 489, 32 N. E. (2d) 737; *Meek* v. *Julian* (1941), 219 Ind. 83, 36 N. E. (2d) 854.

Based upon these principles which are the well established law of this jurisdiction, I believe there is ample evidence set out in the majority opinion to require this court to affirm the award of the Industrial Board. However, there is additional evidence in the record which substantially tends to support the award of the board.

For the purpose of presenting a more complete understanding of the relationship existing between the parties, I set out the contract between Morgan and Trippeer:

> "This agreement made and entered by and between Claude Trippeer as party of the first part and C. D. Morgan, Agent for E. E. Eley as party of the second part.

> "WITNESSETH.

> "That Claude Trippeer is selling to C. D. Morgan, Agent for E. E. Eley 10 Sugar, 4 Red Oak, 2 Ash, 1 Popular, 1 White Oak, 1 Linn, 1 Red Elm, 5 Water Elm, 4 Sugar and 1 Red Elm tree, all of the above described timber located on the farm known as the Trippeer Farm located ½ mile south of the Circus Winter Quarters East of Peru, Indiana. Contract price of said timber $65.00. It is further understood that C. D. Morgan, Agent for E. E. Eley reserves the rights to remove timber without *be* a tresspasser, within six months from date of contract.

> "It is. further understood that all tops of trees are to remain on farm.

> "Claude Trippeer agrees upon receipt of _____ that he will execute a bill of sale to C. D. Morgan, Agent for E. E. Eley showing the same to be free and clear of all liens whatsoever.

> "In witness whereof the parties hereto have hereunto set their hands and seal this Aug. 30, 1941."

Trippeer testified he received appellants' check for the $65.00 provided for in this contract when he signed it. In describing how the men working under him were paid, Morgan testified that in several instances these employees were paid directly by Eley, but that he usually went to Argos on Saturday morning and received from Eley the money with which to pay the cutters. Morgan said he did not have either money or equipment of his own to conduct these operations.

George E. Eley, one of the appellants, testified their business consisted of buying timber, cutting it, hauling it to the mill, and manufacturing it into lumber. He said the logs were obtained through employees known as "commission men" and from lumber scalpers. The distinction between commission men and scalpers was said to be that when the logs came through a commission man, if the timber overruns the lump price paid for the timber, its cutting and hauling, it was appellants' profit, while if it overruns when it comes from scalpers, that was the scalpers' profit. The appellant, George E. Eley, said he handled the Workmen's Compensation insurance matters and other things of that nature for appellants, and that he never received or requested from C. D. Morgan a certificate of compliance with the Workmen's Compensation law. He said Morgan did not have the money or equipment to do the work, and that the money paid to Morgan and those working under him were advances which were charged to Morgan, but admitted that if there were not enough logs delivered to appellants from Morgan's operations it would be appellants' loss.

I believe these facts fairly establish that appellants accepted the benefits of the contract and by so doing ratified it. Can it be contended that they may have the benefits in the property which was the subject of

the contract, but simply because it was not shown that appellee saw the contract or knew its contents that the appellants may repudiate their responsibility under the Workmen's Compensation Act? I think not. Furthermore, would not the actions of the appellants in their dealings with Morgan and those persons working under him have led reasonable men to believe that Morgan was either the agent or employee of appellants?

But there is still another strong reason why I feel the award of the Industrial Board should be affirmed. If it be conceded (which I do not do) that Morgan was not the agent of the appellants, then under the facts clearly established by the record Morgan's relation with appellants was that of contractor. The appellants did not request or require a certificate of compliance with the Workmen's Compensation Act, as required by § 14 of the Act (Acts 1929, ch. 172, § 14, p. 536, § 40-1214, Burns' 1940 Replacement, § 16390, Baldwin's 1934), which provides, in part, as follows:

> "Any principal contractor, intermediate contractor, or subcontractor, who shall sublet any contract for the performance of any work, to a subcontractor subject to the compensation provisions hereof, without requiring from such subcontractor a certificate from the industrial board showing that such subcontractor has complied with sections 5, 68 and 69 [§§ 40-1215, 40-1601, 40-1602] hereof, shall be liable to the same extent as such subcontractor for the payment of compensation, physician's fees, hospital fees, nurses' charges, and burial expenses on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract."

Not having complied with this provision of the act, the appellants would be liable for the injury sustained by appellee. *Chicago and Erie Railroad Company* v. *Kauf-*

*man et al.* (1922), 78 Ind. App. 474, 133 N. E. 399; *Moore et al.* v. *Copeland* (1928), 88 Ind. App. 54, 163 N. E. 235; *Freund et al.* v. *Allen et al.* (1934), 98 Ind. App. 660, 184 N. E. 421.

For the reasons herein set out, I feel that the decision of the majority in this case is in direct conflict with the established precedents in this jurisdiction, and the award of the Industrial Board should be affirmed.

DOWELL, J.—Concurs with this dissent.

NOTE.—Reported in 46 N. E. (2d) 492.