PATTON PARK, INC. *v.* ANDERSON.

[No. 27,983.   Filed March 27, 1944.   Rehearing denied April 25, 1944.]

450

*Charles H. Foley*, of Martinsville, for appellant.

*Willis Hickam*, of Spencer, for appellee.

FANSLER, C. J.—The appellee's husband, John Anderson, suffered an accidental injury resulting in his death. The appellee filed a claim with the Industrial Board asserting that at the time of her husband's death he was in the employ of the appellant, and that his death resulted from activities within the scope of his employment. The Industrial Board found for the appellee, and made an appropriate award under the Workmen's Compensation Act (§ 40-1501 *et seq.*, Burns' 1933, § 16426 *et seq.*, Baldwin's 1934). The appellant sought a review in the Appellate Court, asserting that the award is not supported by sufficient evidence and is contrary to law, for the reason that there was a total failure of evidence to prove the employer and employee relationship at the time of the accident, and to prove that the accident and injury arose out of and in the course of employment with the appellant. The Appellate Court sustained the appellant's contentions and reversed the Industrial Board. The case comes here on a petition to transfer, which, by appropriate showing, brings

the evidence before us. See *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. (2d) 399.

The evidence discloses that the appellant is a "not for profit" Indiana corporation, and that it operates a public recreation park in Morgan County; that its property consists of 190 acres of land upon which Patton Lake is located. Near the south end of the lake appellant maintains a lodge for the comfort and convenience of its patrons, who use the premises, for a small fee, as a picnic ground and for boating and fishing. The entire property was under the supervision of Webb Wilson, an employee, who was paid a salary, and in addition was permitted to operate a refreshment concession on the premises. Wilson, with his wife and child, lived at the lodge. At the time here involved, a Mr. Harvey owned a lot adjoining the appellant's property on the west side of the lake, and a Mr. Nable owned a lot on the east side of the lake. John Anderson, appellee's decedent, was employed by appellant from about November 1, 1941, until his death on March 3, 1942. He worked under the direction of Webb Wilson, who was appellant's agent in charge of the premises. He reported each morning for work at about 9:00 o'clock, and worked until 4:30 or 5:00 in the afternoon. He was paid at the rate of 25 cents per hour. His work consisted in cleaning-up about the premises, including the lodge, cutting wood for heating the lodge, building fires, cleaning and caring for boats, and doing such odd jobs and chores as were required of him, which included feeding a pig and dogs in the evening, and staying at the lodge when the Wilsons were away and waiting on customers. A record of his services was kept by Wilson and reported weekly to the appellant's secretary-treasurer, who issued checks to Anderson for all of the time reported by Wilson. Anderson was not

paid for his lunch hour. There is evidence that during the Christmas holidays in 1941, Mr. Harvey asked Wilson to get some one to clean the brush off his lot, and said that if Wilson would pay for the work he would reimburse him. Wilson spoke to Anderson about doing the work when certain other work upon appellant's premises had been completed. For several days before March 3, 1942, the weather had been cold and the lake was frozen over. During that period, Anderson, under Wilson's instructions, and at times prescribed by Wilson, had done some work in cleaning up the Nable lot on the opposite side of the lake, and in going back and forth he had traveled over the ice on the lake. For this work on the Nable lot, Anderson turned in his time to the appellant and was paid by appellant's check. The Harvey lot was located on the same side of the lake as the lodge and about one-half mile northwest. It could be reached by a trail running from the lodge, but it is not clearly shown that this was an established route. It was over rough and broken timber land, with steep hills and deep ravines, and there was some evidence that it was dangerous to travel. One day during the week before Anderson's death, Webb Wilson took him to the Harvey lot, where they both worked clearing the trails down to the Harvey cabin "so we wouldn't have any trouble getting through," as Wilson testified. It does not appear how Anderson was paid for this day's work.

There is evidence that on March 3rd, while the lake was still frozen over, Anderson went to work at appellant's place at about the usual hour and worked in and about the lodge until noon; that Wilson told him it would be a good time to do the work on the Harvey lot; that he ate his lunch at the lodge and took a nap, and in the afternoon started over the trail, through the

hills, on the west side of the lake, toward the Harvey lot, taking with him an axe, and perhaps another tool, owned by appellant and which he was accustomed to use in his work. This is the last time he was seen alive. Webb Wilson had left the premises in the afternoon and returned later in the day. Mrs. Wilson expected Anderson back at the lodge at the end of the day to perform his evening chores. Anderson did not return, and that night the Wilsons became alarmed about him, and about midnight Webb Wilson went to Anderson's home and asked Mrs. Anderson if he was there. He told her that Anderson had not returned in the evening as they expected. Mrs. Anderson went back to the lodge with Wilson and stayed there while Wilson and his wife went to look for Anderson. The Wilsons left the lodge and returned in about half an hour, saying they had not found him, but would go again to look for him in the opposite direction. When they started searching again, they went to the Harvey lot and found evidence that Anderson had cut brush that afternoon. They called him, but got no response, and returned to the lodge and called the sheriff, who organized a searching party. A search that night disclosed Anderson's tracks where he had walked from the cabin, a short distance to a boat landing on the lake at the Harvey lot, and had started walking southeast across the ice toward the lodge. He had walked over the ice five or six hundred feet to a point about fifteen feet from the west shore, where he broke through the ice and was drowned. The next day his body was recovered.

It is clear that Anderson was a regular employee of the appellant, and the evidence is sufficient to sustain an inference that he was on his way to the lodge to

perform his evening chores for the appellant when he met his death on appellant's premises.

It is contended by the appellant that the evidence shows that on the day in question the appellant had no work for Anderson, and that Wilson made an arrangement with Anderson by which Anderson became a special casual employee of Harvey; that when he left appellant's premises it was as an employee of Harvey, and not for purposes in connection with appellant's business. We cannot agree that the evidence requires such a conclusion, and that it is not sufficient to support a reasonable inference that in going to Harvey's premises and performing work there he was acting under the direction of appellant's agent Wilson, just as he had in the previous week, and that he expected to report his time to Wilson and to be paid for the time spent on the Harvey premises by the appellant, as he may have been the week before, and as in the case of the services performed on the Nable lot.

It is true that there is a sharp conflict in the evidence upon the question of whether Anderson was working for the appellant and under its direction while at the Harvey lot on the day of his death. There is evidence that Wilson told Anderson that it would be a good day to do the work there. Orders and directions to employees are not always given in a blunt and direct manner. Quite often directions to employees take the form of suggestions or requests, but are understood nevertheless as orders.

Mrs. Anderson testified to a conversation with Wilson immediately after her husband's death in which Wilson indicated that he had no knowledge of Anderson having quit work at noon. She testified that no one had ever indicated to her that her husband had been working for Mr. Harvey on the day of his death until she re-

ceived a letter from appellant's attorney in June. On cross-examination the appellant's attorney asked Mrs. Anderson if her husband ever got any pay for labor around the neighborhood of the lake in addition to the checks he got from appellant, and she answered "No." In the same cross-examination she testified that they always got groceries with her husband's check, and that she cashed it; that the checks would average $8 per week. She said her husband's pay for working on the Nable lot was in the weekly check from appellant. On cross-examination she was asked how she knew that this money was in the check, and she answered: "Well, he told me it was, and he hadn't worked so much that week, and we thought the check would be a lot shorter, and he said they put it on the check." Because of this testimony the appellant contends that Mrs. Anderson's testimony supporting the view that her husband was working for the appellant is hearsay, and that it cannot be considered of any probative force. But she testified that she knew the days that he worked, was familiar with the amount of his checks, and that she cashed them, and that "we thought the check would be a lot shorter," indicating that she, personally, had some knowledge of the facts, and that the check was larger than she had anticipated. This, with the admitted fact that during that week Anderson worked on the Nable lot, leaves some basis for her testimony that the time was included in the check, independent of what her husband may have told her. It is noted also that early in Mrs. Anderson's direct examination the appellant objected to a question concerning one of the pay checks, on the ground that the check would be the best evidence. He was asked to produce the pay check, and then withdrew the objection. It is conceded that Anderson's

time was reported by Wilson to the treasurer of the company, who issued checks for the time reported.

In *Red Cab, Inc.* v. *Ziegner* (1941), 108 Ind. App. 607, 614, 29 N. E. (2d) 330, 332, the court said concerning some hearsay testimony: "While said evidence may be said to be in the general field of hearsay evidence, yet in Workmen's Compensation cases the strict hearsay rule has been relaxed and modified in a situation such as the instant case presents where the employer has all sources of information at his command when a report of the accident is made and has ample opportunity to investigate and be satisfied as to the facts."

We cannot agree that all of the evidence which tends to support an inference that Anderson was working under the direction of the appellant, and looking to the appellant for compensation, was hearsay. It might have been concluded that Mrs. Anderson knew of her own knowledge, from her familiarity with the hours her husband was employed, and the amount of his checks, that pay for work on the Nable lot had been included in the pay check for that week. Mrs. Anderson was not clear that the time spent on the Harvey lot the previous week had been included in the check from the appellant for that week, but she said he got no pay from any other source, and there is no evidence that it was not included in the check. The appellant did not produce its checks and the time records reported by Wilson to its treasurer upon which the checks were based, and it is not shown that they were destroyed or not available. On the contrary, the hearing member may have concluded, from the objections and discussions between counsel, that the checks and records were available and not produced. The statute, § 40-1506, Burns' 1940 Replacement, § 16431,

Baldwin's 1934, provides that the procedure "shall be as summary and simple as reasonably may be." It is well settled that the strict rule of evidence in court does not apply to the proceedings.

We must conclude that the fact that Anderson had worked upon the Nable lot at the direction of Wilson, and that he was paid for the work by the appellant, that he was taken to the Harvey lot during the previous week, where he worked with and under the direction of Wilson, that on the day of his death he went to the Harvey lot to work upon the suggestion of Wilson, which, the hearing member, listening to the testimony and observing the witness Wilson, may properly have construed as an order or direction, that his pay for that day's work may have been included in his check from the appellant, since there was no evidence that it was not, that he was expected back to do chores at the lodge before going home, that he was an unskilled laborer, whose services commanded but 25 cents an hour, and that Harvey was a patron of the lodge and a neighbor, and the improvement of his adjacent property might have directly benefited the appellant and might have accounted for the willingness of Wilson to take Anderson to the Harvey lot and direct and lay out work for him, sufficiently support a conclusion that he was not working for Harvey as an independent contractor on his own initiative, but that he was working under the direction and supervision and orders of Wilson, the appellant's supervising agent.

The appellant also contends that crossing the lake upon the ice was a risk outside of Anderson's employment. The appellant's premises were located in rough country, where a lake had been created by damming a stream. Anderson's employment involved rough, outdoor work. There is evidence that

the trail from the lodge over the appellant's property to the Harvey lot was rough and hilly, and that there were ravines on the way, and that there were some dangers involved in traveling it. The week before, in going to and from the Nable lot, Anderson had crossed the lake on the ice with the knowledge of Wilson, and it does not appear that Wilson had made any criticism of the mode of travel or had forbidden Anderson to use the ice as a means of travel. If Anderson had used the trail through the woods in coming back to the lodge to do his evening chores and had fallen to his death in a ravine, it might have been argued that a safer path was afforded by the ice on the lake. Anderson may have made a mistake in judgment in crossing the ice; he may have been negligent in so doing, but there is no evidence that it was a forbidden or unusual mode of travel in such surroundings.

In view of the situation of the parties, and upon the whole evidence, we are unable to say that there is no substantial evidence sufficient to sustain a reasonable inference upon the part of the board that Anderson met his death in the course of his employment by the appellant.

The judgment of the Appellate Court is reversed, with instructions to affirm the award of the Industrial Board.

NOTE.—Reported in 53 N. E. (2d) 771.

ON PETITION FOR REHEARING.

FANSLER, C. J.—In a petition for rehearing the appellant points to certain inaccuracies in the original opinion in summarizing the evidence. The statements in question were taken from the Appellate Court's opinion and the appellee's brief, and no

suggestion that they were inaccuracies was found in the appellant's brief. But, as we view it, these details are relatively unimportant. The evidence as a whole is sufficient to justify the conclusion of the Board that Anderson was under the control and supervision of Webb Wilson at all times, and that when he was working for neighbors he was merely a loaned employee who looked to the appellant or its manager, Webb Wilson, for his compensation. The fact that the appellant was to be reimbursed for its advancement of the compensation for work done on neighboring premises does not alter the situation.

Rehearing denied.

NOTE.—Reported in 54 N. E. (2d) 277.