VENDOME HOTEL, INC. *v.* GIBSON.

[No. 18,291. Filed May 16, 1952. Rehearing denied June 20, 1952. Transfer denied October 6, 1952.]

*Isidor Kahn; Harry P. Dees;* and *Kahn, Dees, Donovan & Kahn* (of counsel), all of Evansville, for appellant.

*Arthur Griffith*, of Evansville, for appellee.

ROYSE, J.—Appellant here questions an award of compensation to appellee made by a majority of the Full Industrial Board of Indiana.

There is little dispute in the record as to the facts necessary to determine the questions presented. Appellee was employed by appellant as a dishwasher. Her duties were to dry the dishes and do other work around the kitchen. She had to go to the basement to change her clothes. The rest room was in the basement. There was an ice cutting machine there which stood against a wall. On the day in question, when appellee had some slack time she went to the rest room and on her return she went over to the ice machine to get some ice to eat or put in a glass of water. The machine was being operated by her superior. She reached into or onto the machine and three fingers were cut off. Other employees had at various times taken ice from this machine. There was no evidence that any of them had taken ice while the machine was being operated. Appellant had no rules forbidding employees to take ice from this machine. Appellee had never been told by any of her superiors not to do so.

Appellant first contends the award should be reversed because the Board in one of its findings found a disagreement arose between the parties as to the amount of permanent partial impairment, if any, suffered by appellee. It bases this contention on the fact there was no dispute concerning that matter between the parties. However, the Board also found appellee sustained personal injuries arising out of and in the course of her employment with appellant. This was sufficient.

Appellant next contends the evidence conclusively shows appellee's injuries were not the result of an accident arising out of and in the course of her employment. It is its position that although the injuries occurred in the course of her employment they did not arise out of it. In support of this proposition it says:

"Although it has been held in Indiana that such actions as are necessary to the life, comfort and convenience of a workman while at work, though personal to himself, and not, technically, acts of service, are incidental, and therefore are deemed to have arisen out of his employment, the act of the Appellee in this case in reaching in the ice-shaving machine to get some ice to eat or to put in a glass was not necessary or essential for her life, comfort or convenience, and, therefore, was not incidental to her employment."

It further says:

"The uncontradicted evidence in this case shows that the Appellee unnecessarily exposed herself to an obviously dangerous machine, which exposure was neither directly nor indirectly connected with her employment, but which exposure to the above peril was purely for the Appellee's own personal gratification."

In support of these contentions it relies particularly on the following cases: *Morgan* v. *United Taxi Co., Inc.* (1938), 105 Ind. App. 340, 14 N. E. 2d 736; *In re Betts* (1918), 66 Ind. App. 484, 118 N. E. 551; *Shepherd* v. *Washington Parks Cemetery Association* (1933), 97 Ind. App. 455, 186 N. E. 356; *Mishawaka Rubber and Woolen Mfg. Co.* v. *Walker et al.* (1949), 119 Ind. App. 309, 84 N. E. 2d 897; *Wasmuth-Endicott Co.* v. *Karst* (1922), 77 Ind. App. 279, 133 N. E. 609; *Inland Steel Co.* v. *Lambert* (1917), 66 Ind. App. 246, 118 N. E. 162; *Cassagne* v. *Snow Hill Coal Corp.* (1940), 107 Ind. App. 556, 24 N. E. 2d 795.

In Professor Small's Workmen's Compensation Law of Indiana, §6.15, p. 144, the rule which should guide our decision is stated as follows:

"Such acts as are reasonably necessary to the life, comfort, and convenience of a workman, though personal to himself, and not technically acts of service, may be incidental to service. If so, an

accident occurring in the performance of such an act is deemed to have arisen out of the employment."

This rule has been generally recognized by this Court, our Supreme Court, and a majority of the appellate tribunals of this country. The question presented here is primarily one of fact. Therefore, we should not disturb the finding of the Industrial Board unless the record is such that reasonable men could only reach a conclusion opposite that of the Board. It is with this concept of our duty we proceed to consider the authorities relied upon by the parties.

In the Morgan case, *supra,* the appellant was a taxicab driver and fell as he got out of his cab to get some cough drops for a cold. He died from injuries sustained in the fall. In affirming the action of the Industrial Board in denying compensation on the grounds the accident did not arise out of and in the course of his employment, this court said:

"If decedent had been stepping out of his cab for the purpose of taking on or letting off a passenger, when he fell, it might be reasonably said that the accident arose out of and in the course of his employment, but in view of the fact that the evidence shows indisputably that he fell as he stepped out of his cab to get some cough drops, we think it would be unreasonable to hold that the accident arose out of and in the course of his employment."

While that case could be distinguished from this case, we agree with Professor Small that it is "badly reasoned" and we disapprove it.

In *In re Betts, supra,* decided by a divided court, we answered a question from the Industrial Board, which is subject to the same criticism as the Morgan case by Professor Small, and in our opinion the holding in that case has been overruled by implication in several

later decisions of this court and the Supreme Court. In our opinion it is not in harmony with the modern trend in such cases.

In the Shepherd case, *supra*, we held the evidence was such that reasonable men might differ as to whether, under the evidence, the decedent suffered an accidental injury while in the employ of appellee.

In the Mishawaka Rubber and Wollen Mfg. Co. case, *supra*, the appellee was fishing during his lunch hour. We held there was no relationship to his eating his lunch and going out on the retaining wall to fish; that his fishing trip was not incidental to his work.

In our opinion, there is nothing in the Karst case, *supra*, to sustain appellant's contention here. In our opinion, this case in principle rejects its contention here.

The facts in the Inland Steel Company case, *supra*, are clearly distinguishable from those in this case. In that case, in passing on the question of whether the accident arose out of the employment, we held the findings of the Board did not show whether there was a path around the excavation, or some other route the appellee could have taken. In that case there was a rule of appellant that employees were not to ride on the company's engines. There was no finding that appellee did not know of this rule. While in this case there was no rule or order of appellant forbidding its employees to get ice from the machine. The evidence is clear it acquiesced in such conduct. In view of these circumstances, the mandate of this court in that case is significant. It is as follows:

"Our Workmen's Compensation Act does not specifically direct what shall be the mandate of this court in case of reversal. It is our judgment, however, that the mandate should be regulated by the facts of the particular case. In the case at bar it

appears to us that the ends of justice will more nearly be met by directing a rehearing before the board, if appellee desires such rehearing."

In the Cassagne case, *supra,* in affirming the award of the Board, we said:

"Having considered all of the evidence, we find that it does not conclusively show that a custom of the employees to ride the 'motors' to the stairway at quitting time was established."

The appellee herein failed to file an answer brief within the time prescribed by the Rules of the Supreme Court. Subsequently she filed a petition for permission to file a brief. This we must deny. Rule 2-16, Rules of the Supreme Court. At the oral argument she appeared through counsel and discussed several cases which we believe are helpful in deciding this case. Among these are: *Holland-St. Louis Sugar Company* v. *Shraluka* (1917), 64 Ind. App. 545, 116 N. E. 330; *National Biscuit Co.* v. *Roth* (1925), 83 Ind. App. 21, 146 N. E. 410.

In the Shraluka case, *supra,* the appellee's regular employment was the operation of a centrifugal machine, but on the day of the accident he was ordered by his foreman to go to the third floor for other work. While working there he was told by the employer's chemist he was wanted on the telephone. He started to walk down the stairs to the phone and slipped on the stairs, suffering severe injuries. The Industrial Board awarded compensation. Appellant contended the accident did not arise out of the employment. In affirming the award this court said: (pp. 549-550).

"Such acts as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not technically acts of service, are incidental to the service; and

an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of the employment, and accidents happening in the performance of such acts are regarded as arising out of and in the course of the employment. From the foregoing propositions it follows logically that an accident to a workman may arise out of and in the course of his employment, within the meaning of the statute, even though he be not actually working at the time of the accident."

In the National Biscuit Company case, *supra,* the appellant filed a special answer averring the injury sustained by appellee was due to his wilful misconduct in that he failed and refused to obey a reasonable rule posted in a conspicuous place and refused to obey instructions not to sit in the window. No such contention is made in this case. In that case the facts were summarized by the court as follows:

" 'The employer was in the business of baking bread. The ovens were on the third floor of a building in Indianapolis. Lester Roth and three other "boys" were employed to dump and rack the bread. There were several windows in the bake-room, the bottoms of which were about three feet above the floor. Between "oven runs" there were rest periods of about ten minutes each. It was hot in the bakery and, at these rest periods, the "boys" went habitually to the windows to get the air and to cool themselves; and they often sat in the windows. Lester commenced work each day at 2:30 p.m. and quit at 11:30 p.m. On the occasion of the accident, he and another boy were at the window. Lester sat in the window, with one leg drawn under him and the other hanging downward. When he attempted to get out the window, he lost his balance, fell outside, and landed feet first on a platform about forty feet below. His feet were severely injured. . . .

" 'During the time Lester was employed, the foreman of the plant posted three typewritten notices forbidding the boys to sit in the windows.

There was one other notice "in writing." No notice was posted at the window from which Lester fell. The notices did not remain up very long. They were torn down. No one knows who tore them down. The employer knew that the boys were in the habit of sitting in the windows.' "

In affirming the award of the Board, this court said:

"In the case at bar, the Industrial Board had the right to take into consideration the tendencies of youth; for that subject constitutes a part of our stock of common knowledge. No chair, stool, bench or other convenience was provided on which the boys could sit during their rest periods at or near the window. We know that boys are not as cautious as persons of mature years. It is only natural, then, to expect that Lester Roth would seat himself on the windowsill for greater comfort than he could derive from standing on the floor. The Industrial Board must have been of the opinion that, by so doing, he did not take himself without the scope of his employment, but that while seated in the window awaiting the expiration of his allotted rest period, he was in the line of duty and in the service of his employer. In the light of the evidence, we cannot say that the board has drawn a conclusion which no reasonable man could legitimately draw; and therefore we cannot set aside the Board's finding that the injury arose out of and in the course of the employment.

". . .

"There is no evidence whatever which could have justified the Industrial Board in finding that the employee was guilty of any wilful misconduct within the meaning of the law."

In the case of *Patton Park, Inc.* v. *Anderson* (1944), 222 Ind. 448, 53 N. E. 2d 771, 54 N. E. 2d 277, appellee's decedent was drowned when the ice broke on a frozen lake on which he was walking from one job to another. There was another route over rough land which he could have used. In rejecting the contention

decedent assumed a risk outside of his employment, the Supreme Court said:

"The appellant also contends that crossing the lake upon the ice was a risk outside of Anderson's employment. The appellant's premises were located in rough country, where a lake had been created by damming a stream. Anderson's employment involved rough, outdoor work. There is evidence that the trail from the lodge over the appellant's property to the Harvey lot was rough and hilly, and that there were ravines on the way, and that there were some dangers involved in traveling it. The week before, in going to and from the Nable lot, Anderson had crossed the lake on the ice with the knowledge of Wilson, and it does not appear that Wilson had made any criticism of the mode of travel or had forbidden Anderson to use the ice as a means of travel. If Anderson had used the trail through the woods in coming back to the lodge to do his evening chores and had fallen to his death in a ravine, it might have been argued that a safer path was afforded by the ice on the lake. Anderson may have made a mistake in judgment in crossing the ice; he may have been negligent in so doing, but there is no evidence that it was a forbidden or unusual mode of travel in such surroundings."

See also: *Carl Hagenbeck and Great Wallace Shows Company* v. *Leppert* (1917), 66 Ind. App. 261, 117 N. E. 531; *Ansted Spring and Axle Company* v. *Ayres* (1919), 69 Ind. App. 160, 121 N. E. 446; *Wynkoop* v. *Superior Coal Company et al.* (1945), 116 Ind. App. 237, 63 N. E. 2d 305.

We are of the opinion the record in this case is sufficient to sustain the finding of the Board that appellee's injuries arose out of and in the course of her employment. Pictures of the ice machine were introduced in evidence. From an examination of those pictures it cannot be said they lead to the sole conclusion that it was an obviously dangerous

machine. Appellant knew of the custom of its employees to obtain ice from the machine and did not forbid them to do so. Hence, it might have reasonably expected she would get ice from this machine. Appellant did not plead by special answer that appellee was guilty of wilful misconduct. If it be contended she was negligent in getting ice at this particular time, that would be no defense in this case. Section 40-1210, Burns' 1952 Replacement.

Award affirmed with usual penalty.

Achor, J., dissents with opinion.

NOTE.—Reported in 105 N. E. 2d 906.

## ON PETITION FOR REHEARING

ROYSE, P. J.—In its petition for rehearing appellant contends that where, as in this case, appellee did not file an answer brief, we must reverse if appellant has presented a *prima facie* case of reversible error. This is not correct. It is a matter of discretion with this court. *City of Connersville* v. *Adams* (1952), 122 Ind. App. 581, 105 N. E. 2d 912; *Meadows et al.* v. *Hickman et al.* (1947), 225 Ind. 146, 73 N. E. 2d 343. The majority opinion in effect held appellant had not, by its brief, presented a *prima facie* case of reversible error.

It next complains because we cited cases referred to by appellee in the oral argument of this cause. It contends it was thereby denied the right to reply to these cases. In the oral argument counsel for appellant, in reply to the argument of appellee's counsel, specifically stated that if appellee's petition to file her brief was denied, he would answer the question presented by appellee orally. Otherwise, he desired time to file a reply brief. He then made an attempt to distinguish those cases. Under these circum-

stances he cannot now complain because we rejected his contention regarding those cases.

Other contentions made by appellant as grounds for a rehearing have been adequately covered in our original opinion.

Petition for rehearing denied.

Achor, C. J., dissents.

NOTE.—Reported in 106 N. E. 2d 464.

## DISSENTING OPINION

ACHOR, J.—My adverse opinion in this case is predicated upon a contrary interpretation of the facts in evidence regarding (1) the "obviously dangerous" character of the ice machine and (2) appellant's knowledge of "the custom of employees to obtain ice from the machine."

As I see it, the direct testimony and all the reasonable inferences drawn therefrom are that the machine was *running* at the time. That "*anybody* would know that it had saws and blades on it to cut ice and that it was dangerous to get snow if the machine was running." And, although appellee testified she "did not see the knives," the pictures in evidence clearly show exposed "saws and blades" extending down into the chute where appellee reached for the ice, and was injured.

With regard to the court's conclusion that "appellant knew of the custom of the employees to obtain ice from the machine," in my judgment this statement only partially disposes of the issue. Here the "obvious danger" was not in the machine itself, but in one's exposure to it *during its operation.* In this regard, although employees had been seen to take ice from the machine when it was *not* in operation, the positive tes-

timony is that employees *were not known* previously to get ice "when the machine would be running."

This is not a case of "mistaken judgment" or mere "negligence," nor was appellant's act *"wilful* misconduct," which must be specially pleaded. *Patton Park Inc.* v. *Anderson* (1944), 222 Ind. 448, 53 N. E. 2d 771, 54 N. E. 2d 277; *Indianapolis Heat, etc., Co.* v. *Fitzwater* (1918), 70 Ind. App. 422, 121 N. E. 126; §§40-1210, 40-1209, Burns' 1952 Replacement.

. As I construe the undisputed facts, we are confronted here with a circumstance where an employee commits an act, solely for her personal comfort and enjoyment and not for the service of her employer but only incidental thereto, and not with the previous knowledge or consent of such employer; by which act, in reckless disregard of her own safety, she subjected herself to an obvious danger, and was injured thereby.

It occurs to me that the most humane or paternalistic construction of the Workmen's Compensation Act does not contemplate that an employee be relieved of all responsibility for his own safety and that an employer be required, under duress of law, to compensate or reward irresponsible employees for injuries so brought upon themselves merely because of their current employment.

NOTE.—Reported in 105 N. E. 2d 906.