## THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY *v.* STOUFFER.

### [No. 8,955.   Filed March 8, 1916.]

1. CARRIERS.—*Carriage of Freight.—Liability.*—The liability of a carrier transporting merchandise does not terminate until such merchandise is unloaded from the car and delivered to the consignee, or is placed in a storehouse for that purpose; and, where the character of the shipment renders it impracticable or impossible of placement in the storehouse, the liability of the carrier as such does not end, in the absence of a contract to the contrary, until the car containing the merchandise is located at the place of destination where such cars are usually unloaded, or at some other convenient place at the request of the consignee.  p. 192.

2. CARRIERS.—*Carriage of Freight.—Liability as Warehouseman.*— Where the evidence showed that a shipment of onions was not removed to a storage house, and there was no evidence to show that it was ever located on one of defendant's unloading tracks, or any other safe and convenient place, the liability of defendant was not changed from that of a common carrier to that of a warehouseman.  p. 193.

3. CARRIERS.—*Carriage of Freight.—Liability.—Burden of Proof.*— Where plaintiff, seeking recovery for goods lost in transit, has shown delivery of same to a carrier, and that they were not redelivered, he has made a *prima facie* case against the carrier, which places upon the latter the burden to prove its freedom from liability.  p. 193.

4. CARRIERS.—*Carriage of Freight.—Liability as Warehouseman.*— Although a warehouseman is not an insurer and his liability is based on negligence merely, defendant carrier could not escape liability for a loss of freight even on the theory that its liability was only that of a warehouseman, where a *prima facie* case was made by showing a delivery to the carrier and no redelivery, and there was no evidence to overcome such *prima facie* case.  p. 193.

From Kosciusko Circuit Court; *Francis E. Bowser*, Judge.

Action by George E. Stouffer against The Chicago, Rock Island and Pacific Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*M. L. Bell* and *A. B. Enoch*, for appellant.

*Frazer & Frazer* and *Richard Vanderveer*, for appellee.

IBACH, C. J.—Appellee brought this action against appellant to recover the value of 100 sacks of onions which he alleges were lost while in its possession. There was a trial by the court and a finding and judgment for appellee. A motion for new trial having been overruled, this appeal was perfected.

The two points relied on for reversal question the sufficiency of the proof to sustain the judgment. The evidence, which is uncontradicted, is in substance as follows: On December 9, 1911, W. C. Holman loaded a number of cars with onions at Menokee, Colorado. The particular car in question was shipped to Denver, Colorado, and from there to Chicago over appellant's railroad. The car arrived in Chicago, and was placed on appellant's sidetrack on December 16, 1911. One witness testified to loading the car in question, and that 330 sacks of onions weighing 32,315 pounds were placed therein. The car was shipped to Chicago in the name of Holman. Holman testified to the fact of shipping the onions, and that the car was full when it arrived in Chicago, and when the onions were later sold to appellee. Witness Piawatti testified that he inspected the car sometime between December 16 and December 19, and found it in good condition and full of onions. On December 19, Holman sold the car in suit with a number of other cars loaded with the same merchandise to M. Piawatti and Son and George E. Stouffer, appellee. These several cars were divided between the purchasers, the car in question going to appellee. On December 22, an order was given to appellant to ship the car in suit to appellee at Kimmel, Indiana. The car was transferred by appellant to the Baltimore and Ohio Railroad Company in Chicago, and by that company forwarded to its destination. When the car arrived at Kimmel, witness Fasnaugh testified to unloading the car there

for appellee and to the shortage of 100 sacks of onions weighing 11,945 pounds. The undisputed evidence also shows that during the entire time the car was in Chicago it was in the charge of appellant.

Appellant contends there is no proof in the record of the quantity of onions delivered to appellant when the contract for transportation from Chicago to Kimmel was entered into and no proof that appellee is the owner of the cause of action sued on to the extent that he is entitled to sue in his own name. There is the further contention that while the car was on appellant's tracks in Chicago appellant was acting as a warehouseman and not as a common carrier, and, therefore, under the evidence there could be no recovery. The record will not sustain this last contention.

In the shipment of merchandise the rule in this State seems to be that the liability of the carrier does not cease until such merchandise is 1. unloaded from the car and delivered to the consignee, or placed in a storehouse provided for that purpose, and in case the character of shipment is such that it would be impracticable or impossible to place it in the carrier's storehouse, then the liability of the carrier as such would not end in the absence of contract providing otherwise, until the car containing the merchandise is located at the place of destination where such cars are usually unloaded, or at some other convenient place at the request of the consignee. *Pittsburgh, etc., R. Co.* v. *Nash* (1878), 43 Ind. 423; *Chicago, etc., R. Co.* v. *Reyman* (1906), 166 Ind. 278, 76 N. E. 970. In other words, since the undertaking of a common carrier includes the obligation of a safe delivery to the consignee, its responsibility as a carrier continues until it has made an actual delivery or has done that which is equivalent, and until that is done,

the shipper is entitled to the same care and protection as before.  4 R. C. L. 749.

There is evidence to show that the shipment in question was never removed to a storage house, and no evidence to show that the car was ever located on one of appellant's unloading tracks or any other safe and convenient place.  Such being the state of the record, we would not be justified in holding that the liability of appellant was ever changed from that of a common carrier to that of a warehouseman.  Where a plaintiff as in the case at bar has shown a delivery of goods to a carrier, and that they were not redelivered, he has made out a *prima facie* case against the carrier which would entitle him to damages for his loss, and to escape the payment of damages, the burden is upon the carrier to prove its freedom from liability.  The liability of a warehouseman is based on negligence, and a warehouseman is not an insurer of goods, as is a carrier, but only the same degree of proof is necessary to make out a *prima facie* case against a warehouseman, namely, the showing of a delivery of goods to him and a failure to redeliver, and the burden is then on him to explain the loss in a manner not attributable to his negligence.  4 Elliott, Contracts §3102.  There was no evidence of any character offered by appellant to show its freedom from liability from the loss of the onions while in its care, and while we have held that there is no evidence to show that the relationship of carrier was changed to that of warehouseman, the evidence produced by appellee is sufficient to charge appellant with negligence upon the theory that the goods were lost while acting as a warehouseman.

As to appellant's second contention, appellee as we

view the evidence was the only person entitled to sue. Judgment affirmed.

NOTE.—Reported in 111 N. E. 809. As to rule that burden of proof is on bailee to explain loss of goods, see Ann. Cas. 1913 D 947. As to termination of carrier's liability as such as affected by its fault preventing removal of goods, see 8 L. R. A. (N. S.) 235. See also, under (1, 2) 6 Cyc 454, 456; (3) 6 Cyc 518, 519; (4) 6 Cyc 462.