STANDARD OIL COMPANY *v.* SODERLING.

[No. 16,784. Filed June 16, 1942. Rehearing denied October 21, 1942. Transfer denied December 3, 1942.]

438

*Nuel D. Belnap* and *Robert N. Burchmore,* both of Chicago, Illinois, and *Frank H. Hatfield* and *Joseph S. Hatfield,* both of Evansville, for appellant.

*R. W. Armstrong,* of Evansville, *T. Morton McDonald* and *Douglas H. McDonald,* both of Princeton, and *McHale, Arthur, Myers & Patrick,* of Indainapolis (*Herbert J. Patrick, Merl M. Wall* and *David M. Cook,* all of Indianapolis, of counsel), for appellee.

STEVENSON, P. J.—The issues involved in this appeal were formed by a seventh paragraph of amended com-

plaint, to which an answer in two paragraphs was addressed.

The appellee in its seventh paragraph of amended complaint alleged that on the 17th day of May, 1938, the appellant, Standard Oil Company, was operating a filling station in the City of Boonville, Indiana. The complaint alleged that on the 14th day of May, 1938, the Standard Oil Company had purchased from the Champion Pneumatic Machinery Company at Chicago, Illinois, an air compressor, to be shipped from Chicago, Illinois, to the Standard Oil Company at Boonville, Indiana, in care of J. Woolley, 300 Main Street, Boonville, Indiana. The complaint alleged that the appellant, in effecting said delivery, caused said air compressor to be delivered by various trucking companies, the last of which was the Schnepper Truck Line, which undertook to transport said air compressor from the City of Evansville, Indiana, to the City of Boonville, Indiana.

The complaint alleged that said air compressor was shipped under the rules and regulations governing Central Motor Freight Association, Inc. and the Schnepper Truck Line, under a certain motor freight tariff rate then on file with the Interstate Commerce Commission of the United States. This tariff rate and the rules and regulations under which this shipment was made provided for pickup and delivery service, and contained the provision that if pieces of freight were so heavy that one man could not load or unload them, "then the consignor and/or consignee shall furnish whatever additional number of men are needed to handle the article, and shall assume the responsibility for the safe loading and/or unloading."

The complaint alleged that by reason of this regulation, it was the duty of the appellant, Standard Oil

Company, to unload this air compressor from the truck of the Schnepper Truck Line when it arrived at its filling station in Boonville, Indiana; and that it was the duty of the appellant to furnish whatever additional men were required to handle this article of freight at the time of its unloading.

The appellee alleged that, at the time and place above mentioned, he was employed to drive and operate the truck on which this air compressor was being transported. He arrived at 300 Main street in the City of Boonville, Indiana, and thereupon the appellant requested the appellee to drive his truck to a particular place on the filling station premises and there unload the air compressor; that at said time and place the appellant ordered one George Elzer, who was then and there employed at said filling station, to aid and assist in unloading said air compressor, and in compliance with said request, the said Elzer engaged in the work of unloading this freight.

The complaint alleged that the said Elzer carelessly and negligently, and while acting for and on behalf of the appellant, so jerked and pulled said air compressor out of said truck as to cause the same to fall upon the body of the appellee with great force, thereby seriously injuring him about his body.

As a result of this negligence, the complaint asked damages in the sum of $75,000.00. To this complaint, an answer in two paragraphs was filed; the first paragraph denying generally any connection or relationship existing between the appellant and the Schnepper Truck Line, and denying any duty imposed upon the appellant by virtue of the freight tariff provisions alleged, and denying any relationship between the appellant and George Elzer, whose alleged negligence caused the in-

jury; the second paragraph of answer was a plea of the statute of limitations.

The case was submitted to a jury for trial, and the jury returned a verdict in favor of the appellee in the sum of $35,000.00. Judgment was rendered upon this verdict. A motion for new trial was filed and overruled; and this appeal has been perfected. The errors assigned in this court are the alleged errors in overruling the appellant's demurrer to the seventh paragraph of amended complaint, which the appellant charges shows on its face that the action is barred by the statute of limitations. The second error relied upon is the alleged error in overruling the appellant's motion to set aside and vacate the judgment; and the third error relied upon is the alleged error in overruling the appellant's motion for a new trial.

Without seeking to discuss, in the order of their presentation, the many questions presented by the appellant, it is apparent to this court that the basic question of liability must depend in the last analysis upon the question of the relationship which existed between the appellant and George Elzer, whose alleged negligence was the proximate cause of the appellee's injury. If, at the time of the alleged injury, the said George Elzer was acting as the agent or servant of the appellant, and within the scope of his employment, then the appellant would be liable under the doctrine of *respondeat superior* for damages which proximately resulted from his negligent act, unless the statute of limitations operates to bar this cause of action.

The appellee relies upon the provisions of the freight tariff, above quoted, as establishing the relationship of master and servant between these parties.

The facts most favorable to the appellee disclose that the appellant as owner of the filling station in Boonville,

Indiana had leased the same to one J. Woolley, who was in possession thereof at the time of this accident. The appellant purchased this air compressor in Chicago, freight prepaid, to its station in Boonville, and directed that it be sent in care of J. Woolley. Mr. Woolley knew nothing about this shipment until it arrived at his station. There is further testimony to the effect that when the appellee arrived he presented the bill of lading to Mr. Woolley and asked instructions as to the place where the air compressor should be unloaded. Mr. Woolley called to George Elzer, his helper, employee, and station attendant to help unload the air compressor, and Mr. Woolley immediately left the premises. After waiting about ten minutes, Mr. Elzer came to the appellee's truck, and together the appellee and Elzer attempted to unload the air compressor. It was in this process of unloading that the negligent act of Elzer occasioned the appellee's injury.

There is no evidence in this case to the effect that the appellant, Standard Oil Company, had any actual knowledge of the manner in which this air compressor was to be shipped, nor of the provisions of the tariff schedule upon which the appellee relies. The appellant gave no orders or directions and employed no servants to act for it in this transaction except in so far as the law implies such relationship from the facts above stated. Assuming for the sake of argument, however, that by shipping the merchandise in care of its tenant, J. Woolley, the appellant thereby authorized him and constituted him its special agent to receive the merchandise; and assuming further, that under the provisions of the tariff schedule relied upon, the appellant was obligated to furnish to the carrier a man to assist in the unloading of this freight, the question eventually

presented is, in whose service was the man so furnished engaged at the time of the negligent act.

This question is not free from difficulty. In determining this question, we must first enquire as to whose work was being performed at the time of the injury. As to this matter, it seems clear that under the contract of shipment the duty was upon the carrier, Schnepper Truck Line, to unload this merchandise from his truck on the appellant's premises.

The fact that the consignee of heavy articles of merchandise was required to furnish a man to assist in the unloading, does not operate to relieve the carrier of this duty. Generally speaking, it is the duty of common carriers to load and unload freight consigned to them for transportation. *Indiana, etc., Traction Co.* v. *Benadum* (1908), 42 Ind. App. 121, 83 N. E. 261; *Chicago, etc., R. Co.* v. *Stouffer* (1916), 61 Ind. App. 190, 111 N. E. 809.

"The last duty required of the common carrier is that of delivery. This obligation is imposed on it by law; as soon as it accepts the goods it becomes ipso facto a part of its contract, whether so expressed or not." 9 Am. Jur., Carriers, § 532, p. 746.

As was said by the Supreme Court of the United States, in the case of *North Penn. Railroad* v. *Commercial B'k* (1887), 123 U. S. 727, 734: "The undertaking of the carrier to transport goods necessarily includes the duty of delivering them."

This rule was again reiterated in the same court in the case of *Danciger* v. *Cooley* (1919), 248 U. S. 319, 327, in the following language: "Transportation, as this court often has said, is not completed until the shipment arrives at the point of destination and is there delivered."

The merchandise in question was in the possession of the common carrier, and the appellant in this case had said nothing or done nothing to relieve the carrier of the duty to unload this merchandise.

We are confirmed in the holding that the duty to unload this merchandise rested upon the Schnepper Truck Line by the further provision of the tariff schedule which provides that:

"Should the carrier be required to furnish extra help, it will be charged for at the rate of one ($1.00) dollar per hour, or fraction thereof, per man. Such time shall be computed from the time that the vehicle arrives at the place of pick up or delivery until such time as the pick up or delivering is completed. This additional service is subject to a minimum charge of one ($1.00) dollar for each man furnished."

Since the carrier was obligated by law to unload this merchandise, it follows, therefore, that the said George Elzer at the time of the injury was engaged in assisting the common carrier in the discharge of this duty. Even though he may have been employed by the appellant, it does not follow that he was the appellant's servant at the particular moment when the accident occurred. It is generally recognized that:

"A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services." Restatement of the Law of Agents, Vol. 1, § 227, p. 500.

As was said by the Supreme Court of the United States in the case of *Denton* v. *Yazoo & M. V. R. Co.* (1932), 284 U. S. 305, 308:

"One may be in the general service of another, and, nevertheless, with respect to particular work,

may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation."

Under such conditions, the liability imposed by the doctrine of *respondeat superior* is made to rest upon the one who has the power to control and direct the servant in the performance of the particular work.

"And that conclusion appears to be consistent with common sense and sound reason, for since the responsibility of the master depends upon his power to control and direct the acts of his servant, if he has surrendered that power to another, the reason for his responsibility ceases, and it would be unreasonable to hold him responsible for the acts of one whom he had not the power to control or direct, merely because the tort feasor was in his general employ. His responsibility does not grow so much out of the relation of master and servant as out of the power of direction and control which are usually incident to that relation." *Hooper* v. *Brawner* (1925), 148 Md. 417, 422, 129 A. 672, 42 A. L. R. 1437, 1440.

Giving the provisions of the tariff schedule its most liberal interpretation, it would seem the only burden imposed thereby upon the consignee was to furnish to the carrier a man to help them in the discharge of their duties, or to pay an additional rate of $1.00 per hour per man, if the carrier was required to furnish such extra help. No additional duties or privileges were conferred upon the consignee so far as the right to dictate the methods or control the process of unloading were concerned.

The record discloses no fact from which an inference could be drawn that the appellant in this case had any

legal right to dictate the time, place, manner or condition under which the air compressor should be unloaded. The most that can be said is that under the tariff regulation, it was required to and did place at the disposal of the Schnepper Truck Line a man to aid them in the discharge of their duty. In the case of *Denton* v. *Yazoo & M. V. R. Co.*, *supra*, the United States Supreme Court said:

> "When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former. This rule is elementary and finds support in a large number of decisions, a few only of which need be cited."

This same rule is announced by our court in the case of *Indiana, etc., Traction Co.* v. *Benadum*, *supra*, in the following language at p. 122.

> "It is well settled that where the employes of one party are engaged in the performance of acts for another, which acts the latter is under a duty to perform, the relation of servant is sustained to the party whose duty it is to perform such work, if such party has the control of the execution thereof."

This rule is very tersely announced in the case of *Ramsey* v. *New York Central R. R. Co.* (1935), 269 N. Y. 219, 224, 199 N. E. 65, in the following language:

> " 'He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work but in all its details.' "

Applying these rules to the facts in this case, it seems clear that George Elzer was not the servant of the

appellant at the time of the injury. It is our opinion further that the said George Elzer never was the servant of the appellant for any purpose under the facts disclosed.

The appellee contends that by consigning the shipment in care of the lessee of the premises, J. Woolley, the appellant thereby constituted the said Woolley its agent to receive this merchandise. Conceding without deciding that such interpretation might be given to this conduct, yet such authorization would constitute the said Woolley a special agent only for the purpose of receiving this shipment. As such special agent, Woolley had no authority to do more than accept and take possession of this air compressor. He was certainly not authorized to go into the market and hire help to assist in unloading the same. The rule is well recognized that one agent has no authority to appoint another agent without the consent or direction of his principal. *Campbell* v. *Galloway* (1897), 148 Ind. 440, 47 N. E. 818; *Lucas* v. *Rader* (1902), 29 Ind. App. 287, 64 N. E. 488.

The liability under the rule of *respondeat superior* for the negligence of a subagent or assistant, procured by a special agent or employee, is well established. The rule is:

". . . that the employer is not liable for the wrongful act of an assistant who has been procured by the employee, unless the latter can be said to have been clothed with authority, express or implied, to employ help—that is, unless the employee, in engaging the assistant, acted within the scope of his employment. If the employee had authority to employ assistants, the employer will be deemed liable; otherwise, he will not be compelled to respond in damages." 35 Am. Jur., Master and Servant, § 540, p. 969.

Measured by this rule, it seems clear to us that by consigning the shipment in care of J. Woolley, the appellant may have thereby authorized J. Woolley to assist in the unloading thereof. There is nothing in the record showing any circumstance or general practice or method of conducting business between the appellant and J. Woolley, that would give rise to an inference that the said Woolley was impliedly authorized to employ assistants. In fact, the contract of lease between the appellant and Woolley expressly denied such authority. This contract contained the following provision:

"It is further understood and agreed that Lessee shall have no authority to employ any persons as agents or employes for or on behalf of the Lessor for any purpose, and that neither the Lessee nor any other persons performing any duties or engaging in any work at the request of the Lessee upon the leased premises shall be deemed to be employes or agents of the Lessor."

It is our opinion, therefore, that at the time of the alleged injury to the appellee, there was no such relationship existing between the appellant and the said George Elzer as warrants the application of the rule of *respondeat superior*.

It follows, therefore, that the evidence is insufficient to sustain the verdict in this case; and the court was accordingly in error in overruling appellant's motion for a new trial.

The appellant contends further that the cause of action set forth in the seventh paragraph of amended complaint is barred by the statute of limitations, since such paragraph of amended complaint was filed after the expiration of two years from the date of the alleged injury. The appellant accordingly contends that the court erred in overruling the appellant's demurrer to the seventh paragraph of amended

complaint. It is our opinion that the court did not err in this ruling.

It is clear that the cause of action pleaded in the seventh paragraph of amended complaint is founded upon the same facts and circumstances as set forth in the other paragraphs of complaint previously filed. All of these paragraphs of complaint, to which the appellant was a party, seek to impose liability upon the appellant for the injuries sustained by the appellee by reason of the relationship of master and servant or principal and agent. The seventh paragraph of amended complaint seeks to establish this relationship by reason of the application of the tariff schedule therein set forth.

It is clear that a recovery by the appellee against the appellant on any one of the paragraphs of complaint would be a bar to his recovery upon the other. This has been considered the true test in determining questions of this kind. *Terre Haute, etc., R. Co.* v. *Zehner* (1906), 166 Ind. 149, 76 N. E. 169. The rule is that:

> "Where an amended complaint merely amplifies or restates in different form the cause of action set out in the original pleading, it relates back to the commencement of the suit, and the statute of limitations is arrested at that point." *Attica Bldg. & Loan Assn.* v. *Colvert* (1939), 216 Ind. 192, 207, 23 N. E. (2d) 483.

It follows, therefore, that the filing of the seventh paragraph of amended complaint must be regarded as filed at the date of the commencement of the action against the appellant.

Since the other questions presented for our consideration on this appeal may not arise in the retrial of this case, we deem it unnecessary to now discuss them.

The judgment of the trial court is reversed with instructions to sustain the appellant's motion for a new

452

trial, and for further proceedings consistent with this opinion.

Judgment reversed.

NOTE.—Reported in 42 N. E. (2d) 373.