JACKSON TRUCKING COMPANY, INC. *v.*

INTERSTATE MOTOR FREIGHT SYSTEM ET AL.

[No. 18,228. Filed March 21, 1952. Rehearing denied May 16, 1952. Transfer denied June 20, 1952. Rehearing on petition to transfer dismissed October 1, 1952.]

*Murray, Mannon, Fairchild & Stewart,* of Indianapolis, for appellant.

*Robert K. Ryan, Burke G. Slaymaker, Theodore L. Locke, Hugh E. Reynolds, Emerson Boyd* and *William B. Weisell,* all of Indianapolis, for appellees.

ACHOR, J.—This is an action for workmen's compensation by the dependent heirs-at-law of Shirley Troxel, against the appellant, Jackson Trucking Company, Inc. and the appellee, Interstate Motor Freight System, on account of the death of the said Shirley Troxel.

The finding of the full Industrial Board was for the appellee Interstate Motor Freight System and against the appellant Jackson Trucking Company, Inc., and award was made accordingly.

There being no dispute as to the facts of the case, this court is required to determine whether, under the facts in evidence, the Industrial Board was in error as to its conclusions of law and its award based thereon.

The essential facts in the case are as follows: The decedent, Shirley Troxel, was buying a tractor from the appellant on a conditional sales contract. He leased said tractor back to appellant Jackson Trucking Company, Inc. and operated the same to draw trailers loaded with cargo assigned to him by said appellant. Troxel paid his own traveling expenses and fuel and maintenance costs for the tractor. He was paid by the appellant on this basis of the freight carried and mileage traveled. Appellant generally provided the cargo and assigned the routes and destination for Troxel's trips. The appellant carried workmen's compensation on the basis of Troxel's earnings. Their relationship was such that it could be terminated any time by either party.

The facts immediately preceding the fatal accident were as follows: The decedent, at the direction of the appellant, hauled a load of freight from Indianapolis to Detroit, Michigan. He had no return load and had been instructed by the appellant that under such circumstances to endeavor to secure such a load from another carrier. He contacted the appellee Interstate Motor Freight System at Toledo for that purpose. He was told that they had loads going to Evansville, Indiana, and thereupon Troxel and another Jackson driver reported to Interstate for inspection and loading. The testimony by an official of Interstate, regarding such inspection, is as follows: "We brought them in and inspected their equipment, as we do, asked for their physical examination so that we were sure that they were capable and could work under not only the Interstate Commerce Commission rules, but our own safety

department rules. . . . We determined that their physical condition was in order and that they were working for a bona fide company, or that they legitimately owned their own equipment, and these two drivers passed the inspection."

The Jackson Trucking Company, Inc. had no authority from the Interstate Commerce Commission to operate between Toledo, Ohio and Evansville, Indiana. Therefore, a trip lease agreement was executed, whereby the Jackson Trucking Company operated under the permit of the Interstate Motor Freight System. In substance, the testimony regarding this trip lease agreement is as follows:

> By the trip lease agreement, the Interstate leased the outfit for the purpose of this trip, and it was operated under that lease, and the form of the lease is prescribed by the Interstate Commerce Commission. The Interstate Motor Freight System leased this outfit and driver for the purpose of this one trip, and we had permission, or authority, from the Interstate Commerce Commission to carry cargo from Toledo to Evansville, and we placed on this unit the Interstate Motor Freight System placard, so at the time it was being operated under the placard and authority of the Interstate Motor Freight System and the authority of the Interstate Commerce Commission.

The essential provisions of the trip lease agreement, pertinent to this cause, are as follows:

"Starting Terminal, Toledo, O.
Out Jan. 5
Rest Indianapolis
Destination Evansville
Authorized truck hire settlement
Operator, JACKSON TRUCKING CO.
$5.75 per ton incld. dely.
Equipment Owners Name JACKSON TRUCKING CO. Phone Fr. 2543
Driver's Physical Examination at Colfax, Ind.
Examined by Dr. Stout

DRIVER, SHIRLEY TROXEL 1½-113
Owner  JACKSON TRUCKING CO.    392 Miles
@5.75 per ton

### INSTRUCTIONS TO DRIVER

In transporting this load you are to travel without layover, except for rest stops required by I.C.C.

In case of breakdown, tire failure, accident or other cause that delays scheduled arrival at destination, *you must immediately wire or telephone the destination terminal manager and advise him fully of your trouble and exact location or call the general dispatching office at Grand Rapids, Mich.* Gl. 65351.

You will be responsible for payment of telephone or automobile tracing expense if you fail to comply with above.

Accepted Signed: Shirley Troxel."

Troxel was killed as a result of a collision while in transit between Indianapolis and Evansville. After the fatal accident, Interstate sent one of its trucks to reload the cargo and complete the delivery.

Questions which the court is required to decide are:

  (1) Was decedent an independent contractor;
  (2) Was he an employee of appellant Jackson Trucking Company;
  (3) Was he an employee of appellee Interstate Motor Freight System;
  (4) Was he an employee of both appellant Jackson and appellee Interstate?

(1) The fact that decedent was an employee and not an independent contractor, under the facts stated, is so well established by our courts as to make further discussion of the issue unnecessary. *Ben Wolf Truck Lines* v. *Bailey* (1936), 102 Ind. App. 208, 1 N. E. 2d 660; *Bates Motor Transport Lines, Inc.* v. *Mayer, Admx.* (1938), 213 Ind. 664, 14 N. E. 2d 91. Furthermore, there being substantial evidence, aided

by fair inferences to support the finding of the Industrial Board, it is conclusively binding upon the Appellate Court. *Indianapolis Heat & Light Co.* v. *Fitzwater* (1919), 70 Ind. App. 422, 121 N. E. 126; *Lazarus* v. *Scherer* (1931), 92 Ind. App. 90, 174 N. E. 293; *Prest-O-Lite Co., Inc.* v. *Stone* (1935), 100 Ind. App. 480, 196 N. E. 352.

The question as to whether decedent was an employee (2) of appellant Jackson Trucking Company, Inc. or (3) appellee Interstate Motor Freight System, (4) or both, is much more controversial. A general statement regarding the law on this question is as follows:

"There are a great many instances in which a general employer may loan the services of one of his employees to a special employer. If that employee is killed or injured, there is always a question concerning the liability of the general employer, the special employer, or both. Whether a new relationship has replaced the old depends upon several factors, but principally upon whether or not an agreement of employment can be found between the workman and the new, or special employer.

"Since our statute requires that there be a contract of hire before any employer and employee relationship can exist, an employee of a general employer cannot be converted into an employee of a special one without some evidence as to the existence of an agreement between them. However, such an agreement can be implied, . . . However, the right on the part of the general employer to direct and control the workman while in the service of the special employer, coupled with the right to recall him at any time, or to discharge him would negative any evidence of an agreement creating the workman an employee of the special employer.

"While the manner of payment may not be decisive, it is important. . . . The fact that the general employer may have agreed to carry compensation insurance on the employee while in the service of the special employer will also be given its

due weight as evidence of the continuing relationship." Small's Workmen's Compensation Law, §4.13, p.p. 84 and 85.

A recent statement by this court as to the factors upon which the relationship of employment is determined, as between two employers, is as follows:

"Under the Indiana common law in the case of a general employer-special employer relationship, it has been held that the liability imposed by the doctrine of *respondeat superior* is made to rest upon the one who has the *power to control and direct the servant in the performance of the particular work. Standard Oil Co.* v. *Soderling* (1942), 112 Ind. App. 437, 42 N. E. 2d 373; *Indiana Union Traction Co.* v. *Benadum* (1908), 42 Ind. App. 121, 83 N. E. 261; *Kohl* v. *H. P. Lenhart Furniture Co.* (1941), 58 Ind. App. 7, 106 N. E. 399; *Lieber* v. *Messick* (1930), 92 Ind. App. 264, 173 N. E. 238.

"As stated in *Allen* v. *Kraft Food Co.* (1948), (118 Ind. App. 467, 76 N. E. 2d 845), *supra:*

'The mode of payment and the right to terminate the relationship by discharge are each a circumstance to be considered along with other relevant facts and circumstances in determining the relationship, but neither is alone decisive . . . *The power or right to command the act and to direct or control the means, manner or method of performance has been recognized in this state as the "real" test . . . This court has recognized it as the "deci-sive" test.'* " (Our italics.) *Uland* v. *Little* (1948), 119 Ind. App. 315, 321, 322, 82 N. E. 2d 536.

As to the matter of the payment of wages and compensation insurance, according to the evidence there was no correlation between the contract price for this trip and the amount which the deceased would be paid by the appellant. In fact, the deceased would be paid the same amount by appellant Jackson whether or not he carried this shipment or was traveling empty. Also,

it was a fact that appellant Jackson carried compensation insurance on the employee and that his salary was considered in fixing the amount of the premiums paid. This is additional evidence of an employer-employee relationship with the appellant. *Ben Wolf Truck Lines* v. *Bailey, supra; Frankfort, etc. Ins. Co.* v. *Conduitt* (1920), 74 Ind. App. 584, 127 N. E. 212.

The appellee, Interstate Motor Freight System, has cited the following authorities as supporting the proposition that under the facts of the case at bar decedent was an employee solely of the appellant Jackson and not of the appellee Interstate: *Latshaw* v. *McCarter* (1922), 79 Ind. App. 623, 137 N. E. 565; *Central Metal Forms Co.* v. *Molin* (1931), 92 Ind. App. 631, 176 N. E. 873; *Prest-O-Lite Co., Inc.* v. *Stone, supra; Uland* v. *Little, supra; Turner* v. *Schumacher Motor Express, Inc.* (1950), 230 Minn. 172, 41 N. W. 2d 182.

However, an examination of each of the above cited cases reveals that they are distinguishable upon the facts from the case at bar. In each of those cases "the power or right to command the act and to direct or control the means, manner or method of performance," described as the "decisive test," in the case of *Uland* v. *Little, supra,* remained in the general employer, or the evidence as to that fact was in dispute and the Appellate Court merely refused to disturb the conclusion of the Industrial Board under the circumstances.

Particular stress is placed by appellee Interstate upon the case of *Turner* v. *Schumacher Motor Express, Inc., supra,* which, it asserts, is directly in point upon the issues in the case at bar. That case does involve the death of a driver who operated a truck for a general employer subject to a trip lease contract with another carrier. Award was made against the lessor carrier and for the lessee carrier, as in the case at bar.

However, upon examination, the facts in that case also reveal a marked difference in the "decisive" matter of the control of the employer over the employee. In the Turner case, the court said at p. 176: "Although the lease purported to give exclusive control over the truck to Schumacher (the lessee) at the time in question, that control, insofar as the driver was concerned, amounted only to the right to prescribe the cargo, destination, and route." The court further stated at p. 177: "Moore (the lessor) retained determinative supervision over the details of the work, paid the deceased's wages, had the right to discharge him, and had the right to substitute another driver in his place. . . ."

In the case at bar the appellee Interstate not only prescribed the cargo, destination and route, as in the Turner case, but prescribed a route over which appellant Jackson had no right to travel but which appellee Interstate alone had a right to travel. Another distinguishing factor in the case at bar is the fact that Interstate examined and approved this particular driver and also the vehicle as a condition of employment. Finally, especial consideration must be given to the distinguishing fact that in the case at bar Interstate gave directions, prohibitions and precautions as to the driver's conduct while on the road, particular reference being made as to rest periods and notices in event of mishap or delay in transit, which, according to the case of *Uland* v. *Little, supra,* is the "decisive test."

In order to determine this issue, as to whether the decedent was an employee of Jackson or Interstate or both, it is necessary that we analyze the facts in evidence, as they control this employer-employee status. While it is true that appellant Jackson paid the decedent wages for this particular trip on a basis which had no correlation with the amount paid

Jackson by appellee Interstate, and that only appellee Jackson carried compensation insurance on decedent, these facts are not "decisive" in determining the relationship of *respondeat superior*.

The "real," the "decisive" test is who had "the power or right to command the act and control the means, manner or method of performance," (*Uland* v. *Little, supra*) and to whom was decedent accountable for his performance upon arriving at his destination.

Generally the "means and method of performance" was controlled by the lease, and the nature of the employment itself. It would appear from the evidence that appellant Jackson retained such control over the *"manner* of performance" that it could, with the consent of Interstate, discharge the decedent Troxel if his conduct were such as to jeopardize either its equipment or the cargo, or unreasonably delay its transit.

On the other hand, Interstate, in addition to prescribing "the cargo, destination and route," as in the *Turner* case, *supra*, retained direct control over Troxel's *"manner* of performance," with regard to the actual operation of the truck in such particulars as "rest stops" and notice to be given in event of "breakdown, tire failure, accident or other cause that delays scheduled arrival at destination." Also it would appear that Interstate retained the right to discharge the decedent in event his "manner of performance" either jeopardized its cargo or unreasonably delayed its transit and to complete the haul with another truck and driver. After the wreck it was Interstate which sent another carrier to reload and complete the delivery.

A further fact regarding the agreement of employment, as it affected the decedent Troxel and which evidenced his understanding regarding his accountability for his performance, is the fact that duplicate

"trip logs" were made by him with one copy being delivered to the appellant Jackson and the other to the appellee Interstate.

In the light of the above facts, we are constrained to hold that the decedent was, in fact, an employee of *both* the appellant Jackson and the appellee Interstate. As stated by this court in the case of *Jones* v. *Furlong, Admx.* (1951), 121 Ind. App. 279, 293; 97 N. E. 2d 369, 375:

"It is not inconsistent for the same person to act as an employee of one person in certain aspects of a transaction and as an employee of another in a different part of the business. *McDermott's Case* (1933), 283 Mass. 74, 77, 186 N. E. 231, and cases cited."

Neither is it inconsistent that, where two employers so associate themselves together that both are in direct control of the employee and he is made accountable to both, he will be considered an employee of both employers and that both will be jointly chargeable with the responsibilities of his employment.

Award reversed. Cause remanded to the Industrial Board for further proceedings consistent with the views expressed herein.

## DISSENTING OPINION

ROYSE, J.—I cannot agree with the conclusion of the majority opinion in this case. I do agree that the decedent was an employee and not an independent contractor. For the reasons hereinafter stated, I believe the award of the Full Industrial Board should be affirmed.

In my opinion the provisions of the trip lease agreement set out in the majority, and the uncontradicted evidence of the appellee Interstate Motor Freight Sys-

tem, lead inescapably to the conclusion the deceased was an employee of appellant.

The facts disclose there was a contract between Interstate and the appellant whereby Interstate leased for the trip from Toledo to Evansville the equipment and driver of appellant. By the terms of this agreement appellant was required to furnish a driver who was physically able and capable to drive its truck under the rules of the Interstate Commerce Commission and the safety department rules of Interstate. In its brief under "Condensed Recital of the Evidence" appellant quotes the Interstate dispatcher as stating appellant was listed as the operator and decedent as the driver of the truck.

There is nothing in this contract or in the evidence that would lead even to an inference that Interstate had any right to control decedent except as the employee of appellant. They had no right to discharge him. They made no deductions for social security. They were not obligated to pay decedent anything for his services. There is not a scintilla of evidence in the record to indicate that appellant, if it chose, could not have discharged decedent while he was driving the truck it was operating for Interstate.

I cannot agree with the tenuous distinction which the majority make between the facts in this case and those in the case of *Turner* v. *Schumacher Motor Express, Inc.* (1950), 230 Minn. 172, 41 N. W. 2d 182. In my opinion the controlling facts in that case and those in this case are identical. In that case the Supreme Court of Minnesota said:

> "As applied to the situation before us, these facts have been generalized into the rule that 'An employee furnished to accompany an instrumentality let by the owner thereof to another, * * * (ordinarily) remains the employee of such owner.'

Campbell v. Connolly Contracting Co., 179 Minn. 416, 420, 229 N. W. 561, 563. Particular reason for the rule is found in the fact that the lessor ordinarily will want to send his own operator with a valuable machine to see that it is operated and cared for properly. Anderson v. Abramson, 234 Iowa 792, 13 N. E. 2d 315; Boehck Equipment Co. v. Industrial Comm., 246 Wis. 178, 16 N. W. 2d 298; Lowell v. Harris, 24 Cal. App. 2d 70, 74 P. 2d 551. We feel that the rule must be applied in the circumstances of this case. Although the lease purported to give exclusive control over the truck to Schumacher at the time in question, that control, insofar as the driver was concerned, amounted only to the right to prescribe the cargo, destination, and route. In Antonelly v. Adam, 175 Minn. 438, 221 N. E. 716, supra, we said that the decisions of this court are in accord with cases holding that, where the owner of an automobile lets it for hire with a driver to another for a temporary purpose, the owner remains liable for the negligence of the driver in managing or operating the machine, although the hirer directs the driver when and where to go, whom to carry, and what routes to take."

I believe the reasoning and conclusion in that case are based on sound principles of logic and law and should be followed in this case.

NOTE.—Reported in 104 N. E. 2d 575.