**Gary L. WALTERS, Appellant–Plaintiff,**

v.

**MODERN ALUMINUM, et al.,
Appellee–Defendants.**

No. 84A01–9712–CV–410.

Court of Appeals of Indiana.

July 31, 1998.

Max E. Goodwin, Mann Law Firm Terre Haute, William J. Maher, Maher Law Firm, Terre Haute, for Appellant–Plaintiff.

Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, for Appellees–Defendants.

## OPINION

MATTINGLY, Judge.

Gary L. Walters (Walters) appeals a grant of summary judgment in favor of Modern Aluminum Castings Co., Inc. (Modern). The issue presented for our review is whether Indiana's Worker's Compensation Act prohibits Walters from pursuing a personal injury action against Modern.

Reversed and remanded with instructions to dismiss for lack of subject matter jurisdiction.

### FACTS AND PROCEDURAL HISTORY

Kelly Services, Inc. (Kelly) and Modern were parties to a contract which provided that Kelly would furnish Modern with temporary workers. Pursuant to the terms of this contract, Kelly assigned Walters to render service for Modern. On February 3, 1995, Walters was injured while operating a belt-sander at Modern's plant.[1]

On July 19, 1996, Walters filed a complaint against Modern, alleging that his injury resulted from Modern's negligence. Modern responded by filing an answer denying the allegations contained in Walters' complaint. Modern then filed an amended answer which advanced the defense that Walters' personal injury action was barred by the "exclusive

---

1. At the time of his injury, Walters had been working at Modern for about two weeks.

remedies" provision of the Worker's Compensation Act, and requested that Walters' complaint be dismissed for lack of subject matter jurisdiction.

Modern moved for summary judgment against Walters, reasserting the defense advanced in its amended answer. The trial court granted Modern's motion for summary judgment after a hearing, and Walters now appeals.

The Worker's Compensation Act provides the exclusive remedies for personal injuries arising out of and in the course of employment. *See* Ind.Code § 22–3–2–6. Actions to recover for such personal injuries are cognizable only by the Worker's Compensation Board. *See Perry v. Stitzer Buick GMC, Inc.,* 637 N.E.2d 1282, 1285 (Ind.1994). "The legislature intended the board's jurisdiction in such cases to be original and exclusive, and resort may not be had to the courts until the administrative process has been completely exhausted." *Id.*

### STANDARD OF REVIEW

Modern requested summary judgment on the ground that the exclusive remedies provision of the Worker's Compensation Act bars Walters' personal injury action. We note that to assert the exclusive remedies provision as a defense is to attack the trial court's subject matter jurisdiction. *See U.S. Metalsource Corp. v. Simpson,* 649 N.E.2d 682, 684 (Ind.Ct.App.1995). An attack on the court's subject matter jurisdiction cannot be made by way of a motion for summary judgment. *Williams v. R.H. Marlin, Inc.,* 656 N.E.2d 1145, 1149 (Ind.Ct.App.1995). Such an attack is properly made by moving to dismiss for lack of subject matter jurisdiction pursuant to Indiana Trial Rule 12(B)(1). *Id.* We therefore treat Modern's motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction. *See Davis v. Central Rent–A–Crane, Inc.,* 663 N.E.2d 1177, 1179 (Ind.Ct.App.1996).

When ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may weigh evidence and resolve factual disputes. *Tapia v. Heavner,* 648 N.E.2d 1202, 1205 (Ind.Ct.App.1995). The trial court may also consider the pleadings, affidavits, and any other evidence submitted. *Davis,* 663 N.E.2d at 1179. Generally, the burden of proving that the court does not have jurisdiction rests with the opponent of jurisdiction. *Id.* But when an employer makes such a jurisdictional challenge, the burden shifts to the employee ˋto establish that the cause is properly before the court. *Tapia,* 648 N.E.2d at 1206. This is because public policy favors the inclusion of employees within the scope of the Worker's Compensation Act. *Davis,* 663 N.E.2d at 1179. The trial court's judgment may be affirmed on any theory supported by the evidence of record. *Tapia,* 648 N.E.2d at 1206.

### DISCUSSION

For purposes of the Worker's Compensation Act, it is possible for an employee to be "in the joint service of two (2) or more employers...." Ind.Code § 22–3–3–31. We have held that "[w]here two employers 'so associate themselves together that both are in direct control of the employee and he is made accountable to both, he will be considered an employee of both employers....'" *Simpson,* 649 N.E.2d at 685 (quoting *Jackson Trucking Co. Inc. v. Interstate Motor Freight Sys.,* 122 Ind.App. 546, 557, 104 N.E.2d 575, 580 (1952)). In such a dual employment situation, the same person may act as the employee of one entity in certain aspects of a transaction and as the employee of another in a different part of the business. *Jackson,* 122 Ind.App. at 557, 104 N.E.2d at 580. In the dual employment context, an important issue is whether both employers possess a substantial, but not necessarily exclusive, right or power of control over the employee and the means, manner, and method of his performance. *Simpson,* 649 N.E.2d at 685 (citing *Fox v. Contract Beverage Packers, Inc.,* 398 N.E.2d 709, 711 (Ind.Ct.App. 1980)).

Both parties stipulate that Walters, at the time of his injury, was Kelly's employee. The issue we are faced with is whether Walters was also Modern's employee—and was therefore a dual employee—when he was injured. In determining whether an employer-employee relationship exists, we examine

the following factors: (1) the right to discharge; (2) the mode of payment; (3) the supplying of tools or equipment; (4) the belief of the parties in the existence of an employer-employee relationship; (5) the control over the means used in the results reached; (6) the length of employment; and (7) the establishment of the work boundaries. *Fox*, 398 N.E.2d at 711–12.

We note initially that the facts and legal issues in *Fox* are remarkably similar to those of the present case. In *Fox*, Manpower [2] and Contract Beverage Packers, Inc. (Contract) were parties to an agreement which provided that Manpower would provide Contract with temporary workers. 398 N.E.2d at 710. Pursuant to its agreement with Contract, Manpower assigned its employee Fox to work at Contract's plant. *Id.* Fox was injured at Contract's plant and filed a complaint against Contract, alleging that his injury resulted from Contract's negligence. *Id.* The trial court granted Contract's motion for summary judgment. *Id.*

On appeal, it was undisputed that Fox was an employee of Manpower at the time of his injury. *Id.* at 711. The question we were presented with was whether, at the time Fox was injured, Manpower was his sole employer. *Id.* at 710–11. We answered this question in the negative, noting that there had been an implied employment contract between Fox and Contract; that Contract controlled Fox while he was working at Contract's plant; that Contract was responsible for instructing Fox about how and where his work was expected to be done; that Contract was responsible for providing Fox with necessary tools or equipment; that Contract had the right to discharge Fox if his work were unsatisfactory; and that Contract determined the length of time Fox was required to work at its plant. *Id.* at 712. We acknowledged that Manpower paid Fox's wages, but we noted that this fact would not defeat the existence of an employer-employee relationship. *Id.* There was no dispute that "a majority of the indicia of employer-employee relationship [was] present in the agreement between Contract and Fox." *Id.* We held that Fox was an employee of Contract and that

the Worker's Compensation Act provided the remedy for Fox's injury. *Id.* at 711–12.

■ We must compare the seven *Fox* factors with the facts in this case.

*The Right to Discharge.* Kelly agreed to provide temporary help to Modern, which would pay Kelly for those services. Kelly assumed the legal obligation for each employee's wages, benefits, payroll deductions and unemployment and worker's compensation insurance. *See* R. at 81. In addition, the contract between Kelly and Modern provided that if the employee's services were not performed to Modern's satisfaction, Kelly shall "cancel all charges for unsatisfactory services and furnish a replacement as soon as possible...." R. 81. This type of evidence has been found to be sufficient to constitute the right to discharge, and weighs in favor of Walters being an employee of Modern. *See Fox*, 398 N.E.2d at 712; *Davis*, 663 N.E.2d at 1180.

■ *The Mode of Payment.* With respect to this factor, we note that Walters' wages were paid by Kelly, not Modern. Although this weighs against Walters being considered an employee of Modern, the "mode of payment is not in itself determinative and 'does not defeat the existence of an employer-employee relationship.'" *Simpson*, 649 N.E.2d at 686 (quoting *Fox*, 398 N.E.2d at 712).

*The Supplying of Tools or Equipment.* The parties stipulate that Modern supplied tools and equipment to Walters. Under the *Fox* test, this weighs in favor of Walters being an employee of Modern.

*The Belief of the Parties in the Existence of an Employer–Employee Relationship.* Although no one of these seven factors is decisive, our supreme court has noted, "[t]he primary consideration is that there was an intent that a contract of employment, either express or implied, did exist. In other words, there must be a mutual belief that an employer-employee relationship did exist." *Hale v. Kemp*, 579 N.E.2d 63, 67 (Ind.1991) (quoting *Rensing v. Indiana State Univ. Bd. of Trustees*, 444 N.E.2d 1170, 1173 (Ind.

---

**2.** A temporary service agency.

1983)). According to Walters, neither he nor Modern believed that an employer-employee relationship existed between them. However, a review of the record reveals that the understanding of the parties, as may be inferred from the evidence, was that Walters was expected to work at Modern's plant. It is also clear that Modern had the right to refuse Walters as a worker, and that Walters had the right to refuse to work at Modern's plant. Under these circumstances, it is permissible to conclude that both parties believed an employer-employee relationship existed between Walters and Modern, and that an implied employment contract was formed between them. *See Fox,* 398 N.E.2d at 712; *Tapia,* 648 N.E.2d at 1206–07.

*The Control over the Means Used in the Results Reached.* Another factor is who had the power or right to control the individual at the time of the accident. This factor has, in the past, been found to be dispositive. *Jackson,* 122 Ind.App. at 556, 104 N.E.2d at 579. The contract between Kelly and Modern provides that Modern had this control: "Kelly employees shall perform the services under the Customer's direction, supervision and control." R. at 81. In addition, there was evidence that Modern was permitted to exercise control over the means used in the results reached. *See* R. at 53, 81. This factor weighs in favor of a finding that Walters was Modern's employee.

*The Length of Employment.* At the time of his injury, Walters had been working at Modern for nearly two weeks. Because neither party claims that the length of employment here was so substantial as to be indicative of Walters' employee status, this factor would weigh against an employee-employer relationship between Walters and Modern.

*The Establishment of the Work Boundaries.* The parties have not directed us to evidence which clearly shows that Modern established Walters' work boundaries. However, all of Walters' work for Modern was to take place at Modern's plant, and Modern controlled the jobs to which Walters would be assigned and the hours he would work. R. 264–68. This evidence leads us to conclude this last factor points toward Walters being an employee of Modern.

Only a majority of these seven factors have to be present in order for an employer-employee relationship to exist. *Davis,* 663 N.E.2d at 1180. Since we find that a majority of these factors indicate an employer-employee relationship exists between Walters and Modern, Walters' only cause of action against Modern lies under the Indiana Worker's Compensation Act.

The trial court's grant of summary judgment is reversed, and this cause is remanded with instructions to dismiss for lack of subject matter jurisdiction.

STATON and HOFFMAN, JJ., concur.