**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**DAVID W. CRAIG**
**SCOTT A. FAULTLESS**
Craig Kelley & Faultless
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**THOMAS C. HAYS**
**LEWIS L. WOOTON**
Lewis Wagner, LLP
Indianapolis, Indiana

FILED
Apr 30 2012, 9:33 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NANCY REGULA, as Administrator of the Estate of Daniel G. Young, Deceased, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 89A01-1109-CT-402 |
| | ) | |
| HPG CORPORATION, doing business as Cohen Brothers Metals Company and Integrity Metals, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory A. Horn, Special Judge
Cause No. 89D01-0803-CT-5

**April 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Nancy Regula, as the administrator of Daniel G. Young's estate, appeals the grant of summary judgment in favor of HPG Corporation. We affirm.

## FACTS AND PROCEDURAL HISTORY

On May 26, 2006, Young drove a semi-tractor and fifty-three foot cargo trailer to Integrity Metals, a company owned by HPG. Integrity employees loaded twenty-seven bales of scrap metal weighing a total of 39,177 pounds onto Young's trailer. Young was present during the time the trailer was loaded. Approximately ten miles from Integrity, Young crashed the semi-tractor and the trailer loaded with metal on a curve known as "Stant's Curve." Young died as a result of the accident.

On March 11, 2008, Regula, as the administrator of Young's estate, filed an action against HPG alleging negligence. On May 16, HPG filed its answer to the complaint, and on August 27, 2009, HPG filed an amended answer.

On August 16, 2010, HPG filed a motion for summary judgment, claiming it did not owe a duty to Young or, in the alternative, did not breach a duty to Young, and claiming no action it took was the proximate cause of Young's death. Regula filed her objection and brief in opposition to HPG's motion for summary judgment on April 27, 2011. The trial court held a hearing on June 1, and on August 8 it granted HPG's motion for summary judgment.

## DISCUSSION AND DECISION

Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to

2

judgment as a matter of law." Indiana Trial Rule 56(C). The moving party bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the non-movant to set forth specifically-designated facts demonstrating there is a genuine issue of material fact for trial. *Id.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Id.*

"On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage." *Id.* We will liberally construe the non-movant's designated evidence to ensure he is not improperly denied his day in court. *Ind. Dept. of Rev. v. Caylor-Nickel Clinic*, 587 N.E.2d 1311, 1313 (Ind. 1992).

In granting HPG's motion for summary judgment, the trial court relied in part on *Standard Oil Co. v. Soderling*, 112 Ind. App. 437, 42 N.E.2d 373 (1942), in which Soderling, the driver of the truck transporting the cargo, was injured when an employee of Standard Oil attempted to unload an air compressor. A jury awarded Soderling damages for his injuries, and Standard Oil appealed, arguing it owed no duty to Soderling to provide a person to help unload the air compressor, and thus the injury Soderling sustained was not the fault of Standard Oil. We held, based on long-standing precedent, Soderling had a duty to load and

unload the freight he was responsible for transporting, and thus he was not entitled to damages. *Standard Oil Co.*, 112 Ind. App. at 446, 42 N.E.2d at 377.

However, as the trial court in the instant case noted, the facts here differ from those of *Standard Oil* because Young was not injured in the process of loading or unloading the scrap metal, and no Indiana case addresses a similar fact pattern.

Faced with an issue of first impression in Indiana, the trial court adopted the *Savage* Rule, which states:

> The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

*U.S. v. Savage Truck Line, Inc.*, 209 F.2d 442, 445 (4th Cir. 1953). A latent defect is one not discoverable through reasonable inspection. *Deckard v. Ratliff*, 553 N.E.2d 523, 524 (Ind. Ct. App. 1990).

The trial court found:

> Regula acknowledges in her Brief in Opposition that Integrity Metals only had a duty to remedy latent defects in the load Young was carrying. It is Regula's burden, then, to come forward with evidence of a latent loading defect. . . . However, no such evidence is produced. Regula contends that because Young had never been to Integrity Metals prior to the date of the tragic accident that Young was entitled to rely upon Integrity's representatives to load the trailer in a proper and safe manner for transit. The only evidence properly designated is that Young would look occasionally and observe the Trailer being loaded. If that is true, then Young would have **observed** that the bales of scrap metal were stacked on top of each other and were not bound together nor bound to their pallets. They were placed inside the Trailer in a manner that allowed free movement without any blocking or bracing. The "defect" if one exists, is open, obvious, and therefore, "patent" not "latent."

4

(App. at 19) (emphasis in original). Based on that finding, the trial court granted HPG's motion for summary judgment.

Regula argues the trial court abused its discretion because whether the alleged loading defect was latent or patent was a question for the jury.[1] We disagree.

The Maine Supreme Court, in interpreting the *Savage* rule, held:

> The policy behind the *Savage* rule is well founded. The everyday practice and understanding in the trucking industry, as aptly reflected in the federal regulations on the subject, reflect that carriers logically should have the final responsibility for the loads they haul. No shipper, such as NEPW, can force a driver to accept a load that the driver believes is unsafe. *See* 49 C.F.R. § 392.9(b)(1) (2000). By the same token, a driver must take responsibility for the safety of his or her cargo by inspecting and securing the load. *See* § 392.9(b)(2). The *Savage* rule does not absolve shippers from all responsibility as they bear the onus when cargo has been loaded improperly and that defect is latent. The *Savage* rule simply extends the industry's reasonable understanding to negligence suits involving carriers and shippers.
>
> Initially, the *Savage* rule applied solely to damage caused to the cargo being shipped. *See generally M.C. Dransfield, Annotation, Liability of Carrier by Land or Air for Damage to Goods Shipped Resulting from Improper Loading*, 209 F.2d 442, 44 A.L.R.2d 984 (1953). In subsequent years, courts extended the *Savage* reasoning to include personal injuries to employees of carriers caused by the negligent loading of goods. *See General Electric Co. v. Moretz*, 270 F.2d 780, 785-87 (4th Cir.1959); *Georgia Kraft Co. v. Terminal Transport Co.*, 343 F.Supp. 1240, 1247 (E.D.Tenn. 1972). Most courts now accept the rationale of *Savage* and require carriers to take responsibility for the loads they carry, even if those loads have been improperly loaded by others.

---

[1] In support of her contention, Regula cites cases from other jurisdictions, all of which are distinguishable from the facts of the instant case. *See Smart v. American Welding and Tank Co., Inc*., 149 N.H. 536, 826 A.2d 570, 575 (2003), (summary judgment not appropriate because question whether federal or state law should be applied existed; the language regarding the *Savage* rule was *dicta*), *reh'g denied*; *see also Ebasco Services, Inc. v. Pacific Intermountain Express Co*., 398 F.Supp. 565, 568 (D.C.N.Y. 1975) (summary judgment was not appropriate because there was a question of material fact regarding representations made by the shipper's employees); *see also W. J. Casey Trucking & Rigging Co., Inc. v. General Elec. Co*., 151 N.J.Super. 151, 159, 376 A.2d 603, 607 (1977) (summary judgment not appropriate because shipper and carrier disagreed whether the cargo was loaded properly).

*See id.*

> The reasoning in *Savage* comports with the established duty of care notion that an injury must be foreseeable before a duty attaches. *See Colvin v. A R Cable Services-ME, Inc.*, 1997 ME 163, ¶ 7, 697 A.2d 1289, 1290-91. Here, the carrier has the opportunity to intercept any problem through inspection. In fact, the carrier's driver is under the obligation to conduct such a safety inspection pursuant to federal law. *See* § 392.9(b)(2). Carriers, through their drivers, must ensure the safety of their own loads, even when cargo is loaded by shippers. The *Savage* rule that imposes liability on carriers for the loading done by shippers, even when negligent, has been accepted by the majority of modern courts and by federal regulators.

*Decker v. New England Pub. Warehouse, Inc.*, 749 A.2d 762, 766-67 (Me. 2000).

Similar to Decker, Young had the opportunity to inspect the load, and testimony indicated Young was "in and out of the truck. He was both. He was in the truck, and he's get out, and he'd come back and look, and he would go back to the truck." (App. at 164.) The manner in which the bales of scrap metal were loaded into Young's truck was undisputed – the bales were "placed in fifteen (15) staggering rows, with twelve (12) of the rows being double stacked and three (3) of the bails being single stacked." (*Id*. at 56.) In her response to HPG's motion for summary judgment, Regula stated the bales were "stacked on top of each other and were not bound together nor bound to their pallets." (*Id*. at 167.) This method of loading "allowed free movement of the bales, without any blocking or bracing." (*Id*. at 167-68.)

There is no evidence Young was forced to take the load in an unsafe condition, nor that he attempted to question the manner in which the truck was loaded. Regula has not demonstrated Young was unaware of the condition of the bales and the possibility they could shift, which could result in an uneven weight distribution in his trailer. Rather, had Young

6

inspected the load, as apparently is required by law, he would have seen the patent defect in the loading of the bales of scrap metal. Therefore, HPG owed no duty to protect Young from injuries resulting from that patent defect, and summary judgment was appropriate. Accordingly, we affirm.

Affirmed.

CRONE, J., and BROWN, J., concur.